# Exhibit 90

# MINIMUM STANDARDS FOR LOCAL DETENTION FACILITIES
## TITLE 15-CRIME PREVENTION AND CORRECTIONS
## DIVISION 1, CHAPTER 1, SUBCHAPTER 4

### 2008 REGULATIONS

### TABLE OF CONTENTS

*ARTICLE 1. GENERAL INSTRUCTIONS* ................................................................ *1*

1004.   Severability. ................................................................................... 1
1005.   Other Standards and Requirements. ................................................ 1
1006.   Definitions. ..................................................................................... 1
1007.   Pilot Projects. ................................................................................. 6
1008.   Alternate Means of Compliance. ..................................................... 8

*ARTICLE 2. INSPECTION AND APPLICATION OF STANDARDS* ..................... *9*

1010.   Applicability of Standards. ............................................................. 9
1012.   Emergency Suspensions of Standards or Requirements. ................ 12
1013.   Criminal History Information. ........................................................ 12
1016.   Contracts for Local Detention Facilities. ...................................... 12
1018.   Appeal. .......................................................................................... 12

*ARTICLE 3. TRAINING, PERSONNEL, AND MANAGEMENT* ......................... *14*

1020.   Corrections Officer Core Course. .................................................. 14
1021.   Jail Supervisory Training. ............................................................. 14
1023.   Jail Management Training. ............................................................. 15
1024.   Court Holding and Temporary Holding Facility Training. .............. 15
1025.   Continuing Professional Training. ................................................. 15
1027.   Number of Personnel. .................................................................... 15
1028.   Fire and Life Safety Staff. ............................................................. 16
1029.   Policy and Procedures Manual. ..................................................... 16
1032.   Fire Suppression Preplanning. ....................................................... 17

*ARTICLE 4. RECORDS AND PUBLIC INFORMATION* ................................... *18*

1040.   Population Accounting. .................................................................. 18
1041.   Inmate Records. ............................................................................. 18
1044.   Incident Reports. ........................................................................... 18
1045.   Public Information Plan. ................................................................ 18
1046.   Death in Custody. .......................................................................... 19
1047.   Serious Illness or Injury of a Minor in an Adult Detention Facility. ................. 20

*ARTICLE 5. CLASSIFICATION AND SEGREGATION* ..................................... *20*

1050.   Classification Plan. ........................................................................ 20
1051.   Communicable Diseases. ............................................................... 20
1052.   Mentally Disordered Inmates. ....................................................... 21
1053.   Administrative Segregation. .......................................................... 21

EXHIBIT 90
WIT: Weeks
DATE: 12-9-11
Kim Edelen, CSR #9042

1054.    Administrative Removal – Type IV Facility. .................................... 21
1055.    Use of Safety Cell. .......................................................................... 22
1056.    Use of Sobering Cell. ...................................................................... 22
1057.    Developmentally Disabled Inmates. ............................................... 22
1058.    Use of Restraint Devices. ................................................................ 23
1059.    DNA Collection, Use of Force. ....................................................... 23

***ARTICLE 6. INMATE PROGRAMS AND SERVICES ................................ 24***

1061.    Inmate Education Plan. .................................................................... 24
1062.    Visiting. ........................................................................................... 24
1063.    Correspondence. .............................................................................. 25
1064.    Library Service. ............................................................................... 25
1065.    Exercise and Recreation. ................................................................. 25
1066.    Books, Newspapers, Periodicals, and Writings. ............................. 26
1067.    Access to Telephone. ....................................................................... 26
1068.    Access to the Courts and Counsel. .................................................. 26
1069.    Inmate Orientation. .......................................................................... 26
1070.    Individual/Family Service Programs. .............................................. 27
1071.    Voting. ............................................................................................. 27
1072.    Religious Observance. ..................................................................... 28
1073.    Inmate Grievance Procedure. .......................................................... 28

***ARTICLE 7. DISCIPLINE ........................................................................ 28***

1080.    Rules and Disciplinary Penalties. ................................................... 28
1081.    Plan for Inmate Discipline. ............................................................. 29
1082.    Forms of Discipline. ........................................................................ 30
1083.    Limitations on Disciplinary Actions. .............................................. 30
1084.    Disciplinary Records. ...................................................................... 31

***ARTICLE 8. MINORS IN JAILS .............................................................. 31***

1100.    Purpose. ........................................................................................... 31
1101.    Restrictions on Contact with Adult Prisoners. ............................... 31
1102.    Classification. .................................................................................. 32
1103.    Release Procedures. ......................................................................... 32
1104.    Supervision of Minors. .................................................................... 32
1105.    Recreation Programs. ....................................................................... 33
1106.    Disciplinary Procedures. ................................................................. 33
1120.    Education Program for Minors in Jails. ........................................... 33
1121.    Health Education for Minors in Jails. .............................................. 34
1122.    Reproductive Information and Services for Minors in Jails. ........... 34
1123.    Health Appraisals/Medical Examinations for Minors in Jails. ....... 34
1124.    Prostheses and Orthopedic Devices for Minors in Jails. ................ 34
1125.    Psychotropic Medications for Minors in Jail. ................................. 35

***ARTICLE 9. MINORS IN TEMPORARY CUSTODY IN A LAW ENFORCEMENT
FACILITY .............................................................................................. 36***

1140.    Purpose. ........................................................................................... 36
1141.    Minors Arrested for Law Violations. ............................................... 36

1142.   Written Policies and Procedures. ................................................................ 36
1143.   Care of Minors in Temporary Custody. ...................................................... 36
1144.   Contact Between Minors and Adult Prisoners............................................ 37
1145.   Decision on Secure Detention..................................................................... 37
1146.   Conditions of Secure Detention. ................................................................. 38
1147.   Supervision of Minors Held Inside a Locked Enclosure. .......................... 38
1148.   Supervision of Minors in Secure Detention Outside of a Locked Enclosure. ..... 38
1149.   Criteria for Non-Secure Custody. .............................................................. 38
1150.   Supervision of Minors in Non-Secure Custody. ........................................ 39
1151.   Intoxicated and Substance Abusing Minors in a Lockup. .......................... 39

### ARTICLE 10. MINORS IN COURT HOLDING FACILITIES .................. 39

1160.   Purpose........................................................................................................ 39
1161.   Conditions of Detention. ............................................................................ 39
1162.   Supervision of Minors. ............................................................................... 40
1163.   Classification. ............................................................................................. 40

### ARTICLE 11. MEDICAL/MENTAL HEALTH SERVICES ................................ 40

1200.   Responsibility for Health Care Services. ................................................... 40
1202.   Health Service Audits. ................................................................................ 41
1203.   Health Care Staff Qualifications. ............................................................... 41
1204.   Health Care Staff Procedure. ..................................................................... 41
1205.   Medical/Mental Health Records. ................................................................ 41
1206.   Health Care Procedures Manual. ................................................................ 42
1206.5  Management of Communicable Diseases in a Custody Setting. ................ 43
1207.   Medical Receiving Screening. .................................................................... 43
1207.5  Special Mental Disorder Assessment. ....................................................... 44
1208.   Access to Treatment................................................................................... 44
1209.   Mental Health Services and Transfer to Treatment Facility...................... 44
1210.   Individualized Treatment Plans. ................................................................. 45
1211.   Sick Call..................................................................................................... 46
1212.   Vermin Control. .......................................................................................... 46
1213.   Detoxification Treatment. ........................................................................... 46
1214.   Informed Consent. ...................................................................................... 46
1215.   Dental Care. ................................................................................................ 47
1216.   Pharmaceutical Management....................................................................... 47
1217.   Psychotropic Medications. ......................................................................... 48
1219.   Suicide Prevention Program. ...................................................................... 49
1220.   First Aid Kit(s)............................................................................................ 49
1230.   Food Handlers............................................................................................. 50

### ARTICLE 12. FOOD .............................................................................................. 50

1240.   Frequency of Serving.................................................................................. 50
1241.   Minimum Diet. ............................................................................................ 50
1242.   Menus.......................................................................................................... 51
1243.   Food Service Plan. ...................................................................................... 51
1245.   Kitchen Facilities, Sanitation, and Food Storage....................................... 52
1246.   Food Serving and Supervision. .................................................................. 52

1247.    Disciplinary Isolation Diet................................................................. 53
1248.    Medical Diets...................................................................................... 53

*ARTICLE 13. INMATE CLOTHING AND PERSONAL HYGIENE ...................54*

1260.    Standard Institutional Clothing........................................................ 54
1261.    Special Clothing................................................................................. 54
1262.    Clothing Exchange............................................................................. 54
1263.    Clothing Supply.................................................................................. 55
1264.    Control of Vermin in Inmates Personal Clothing. ........................ 55
1265.    Issue of Personal Care Items ........................................................... 55
1266.    Showering. ......................................................................................... 55
1267.    Hair Care Services. ........................................................................... 56

*ARTICLE 14. BEDDING AND LINENS................................................................56*

1270.    Standard Bedding and Linen Issue. ............................................... 56
1271.    Bedding and Linen Exchange. ......................................................... 56
1272.    Mattresses. ......................................................................................... 56

*ARTICLE 15. FACILITY SANITATION AND SAFETY.....................................57*

1280.    Facility Sanitation, Safety, and Maintenance. .............................. 57

## ARTICLE 1. GENERAL INSTRUCTIONS

### 1004. Severability.

If any article, section, subsection, sentence, clause or phrase of these regulations is for any reason held to be unconstitutional, contrary to statute, exceeding the authority of the State Corrections Standards Authority, or otherwise inoperative, such decision shall not affect the validity of the remaining portion of these regulations.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

### 1005. Other Standards and Requirements.

Nothing contained in the standards and requirements hereby fixed shall be construed to prohibit a city, county, or city and county agency operating a local detention facility from adopting standards and requirements governing its own employees and facilities; provided, such standards and requirements meet or exceed and do not conflict with these standards and requirements. Nor shall these regulations be construed as authority to violate any state fire safety standard, building standard, or health and safety code.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

### 1006. Definitions.

The following definitions shall apply:

"Administering Medication," as it relates to managing legally obtained drugs, means the act by which a single dose of medication is given to a patient. The single dose of medication may be taken either from stock (undispensed), or dispensed supplies.

"Administering segregation" means the physical separation of different types of inmates from each other as specified in Penal Code Sections 4001 and 4002, and Section 1053 of these regulations. Administrative segregation is accomplished to provide that level of control and security necessary for good management and the protection of staff and inmates.

"Alternate means of compliance" means a process for meeting or exceeding standards in an innovative way, after a pilot project evaluation, approved by the Corrections Standards Authority pursuant to an application.

"Average daily population" means the average number of inmates housed daily during the last fiscal year.

"Contact" means any physical or sustained sight or sound contact between juveniles in detention and incarcerated adults. Sight contact is clear visual contact between adult inmates and juveniles within close proximity to each other. Sound contact is direct oral communication between adult inmates and juvenile offenders.

"Corrections Standards Authority" means the State Corrections Standards Authority, which board acts by and through its executive director, deputy directors, and field representatives.

"Court Holding facility" means a local detention facility constructed within a court building after January 1, 1978, used for the confinement of persons solely for the purpose of a court appearance for a period not to exceed 12 hours.

"Custodial personnel" means those officers with the rank of deputy, correctional officer, patrol persons, or other equivalent sworn or civilian rank whose primary duties are the supervision of inmates.

"Delivering Medication," as it relates to managing legally obtained drugs, means the act of providing one or more doses of a prescribed and dispensed medication to a patient.

"Developmentally disabled" means those persons who have a disability which originates before an individual attains age 18, continues, or can be expected to continue indefinitely, and constitutes a substantial disability for that individual.   This term includes mental retardation, cerebral palsy, epilepsy, and autism, as well as disabling conditions found to be closely related to mental retardation or to require treatment similar to that required for mentally retarded individuals.

"Direct visual observation" means direct personal view of the inmate in the context of his/her surroundings without the aid of audio/video equipment.  Audio/video monitoring may supplement but not substitute for direct visual observation.

"Disciplinary isolation" means that punishment status assigned an inmate as the result of violating facility rules and which consists of confinement in a cell or housing unit separate from regular jail inmates.

"Dispensing," as it relates to managing legally obtained drugs, means the interpretation of the prescription order, the preparation, repackaging, and labeling of the drug based upon a prescription from a physician, dentist, or other prescriber authorized by law.

"Disposal," as it relates to managing legally obtained drugs, means the destruction of medication or its return to the manufacturer or supplier.

"Emergency" means any significant disruption of normal facility procedure, policies, or activities caused by a riot, fire, earthquake, attack, strike, or other emergent condition.

"Emergency medical situations" means those situations where immediate services are required for the alleviation of severe pain, or immediate diagnosis and treatment of unforeseeable medical conditions are required, if such conditions would lead to serious disability or death if not immediately diagnosed and treated.

"Exercise" means physical exertion of large muscle groups.

"Facility/system administrator" means the sheriff, chief of police, chief probation officer, or other official charged by law with the administration of a local detention facility/system.

"Facility manager" means the jail commander, camp superintendent, or other comparable employee who has been delegated the responsibility for operating a local detention facility by a facility administrator.

"Health authority" means that individual or agency that is designated with responsibility for health care policy pursuant to a written agreement, contract or job description. The health authority may be a physician, an individual or a health agency. In those instances where medical and mental health services are provided by separate entities, decisions regarding mental health services shall be made in cooperation with the mental health director. When this authority is other than a physician, final clinical decisions rest with a single designated responsible physician.

"Health care" means medical, mental health and dental services.

"Jail," as used in Article 8, means a Type II or III facility as defined in the "Minimum Standards for Local Detention Facilities."

"Labeling," as it relates to managing legally obtained drugs, means the act of preparing and affixing an appropriate label to a medication container.

"Law enforcement facility" means a building that contains a Type I Jail, Temporary Holding Facility, or Lockup. It does not include a Type II or III jail, which has the purpose of detaining adults, charged with criminal law violations while awaiting trial or sentenced adult criminal offenders.

"Legend drugs" are any drugs defined as "dangerous drugs" under Chapter 9, Division 2, Section 4211 of the California Business and Professions Code. These drugs bear the legend, "Caution Federal Law Prohibits Dispensing Without a Prescription." The Food and Drug Administration (FDA) has determined because of toxicity or other potentially harmful effects that these drugs are not safe for use except under the supervision of a health care practitioner licensed by law to prescribe legend drugs.

"Licensed health personnel" includes but is not limited to the following classification of personnel: physician/psychiatrist, dentist, pharmacist, physician's assistant, registered nurse/nurse practitioner/public health nurse, licensed vocational nurse, and psychiatric technician.

"Living areas" means those areas of a facility utilized for the day-to-day housing and activities of inmates. These areas do not include special use cells such as sobering, safety, and holding or staging cells normally located in receiving areas.

"Local detention facility" means any city, county, city and county or regional jail, camp, court holding facility, or other correctional facility, whether publicly or privately operated, used for confinement of adults or of both adults and minors, but does not include that portion of a facility for confinement of both adults and minors which is devoted only to the confinement of minors.

"Local detention system" means all of the local detention facilities that are under the jurisdiction of a city, county or combination thereof whether publicly or privately operated. Nothing in the standards are to be construed as creating enabling language to broaden or restrict privatization of local detention facilities beyond that which is contained in statute.

"Local Health Officer" means that licensed physician who is appointed pursuant to Health and Safety Code Section 101000 to carry out duly authorized orders and statutes related to public health within their jurisdiction.

"Lockup" means a locked room or secure enclosure under the control of a peace officer or custodial officer that is primarily used for the temporary confinement of adults who have recently been arrested; sentenced prisoners who are inmate workers may reside in the facility to carry out appropriate work.

"Managerial custodial personnel" means the jail commander, camp superintendent, or other comparable employee who has been delegated the responsibility for operating a local detention facility by a facility administrator.

"Mental Health Director," means that individual who is designated by contract, written agreement or job description to have administrative responsibility for the facility or system mental health program.

"Non-secure custody" means that a minor's freedom of movement in a law enforcement facility is controlled by the staff of the facility; and
(1)   the minor is under constant direct visual observation by the staff;
(2)   the minor is not locked in a room or enclosure; and,
(3)   the minor is not physically secured to a cuffing rail or other stationary object.

"Non-sentenced inmate," means an inmate with any pending local charges or one who is being held solely for charges pending in another jurisdiction.

"Over-the-counter (OTC) Drugs," as it relates to managing legally obtained drugs, are medications which do not require a prescription (non-legend).

"People with disabilities" includes, but is not limited to, persons with a physical or mental impairment that substantially limits one or more of their major life activities or those persons with a record of such impairment or perceived impairment that does not include substance use disorders resulting from current illegal use of a controlled substance.

"Pilot Project" means an initial short-term method to test or apply an innovation or concept related to the operation, management or design of a local detention facility pursuant to application to, and approval by, the Corrections Standards Authority.

"Procurement," as it relates to managing legally obtained drugs, means the system for ordering and obtaining medications for facility stock.

"Psychotropic medication" means any medication prescribed for the treatment of symptoms of psychoses and other mental and emotional disorders.

"Rated capacity" means the number of inmate occupants for which a facility's single and double occupancy cells or dormitories, except those dedicated for health care or disciplinary isolation housing, were planned and designed in conformity to the standards and requirements contained in Title 15 and Title 24.

"Regional Center for Developmentally Disabled" means those private agencies throughout the state, funded through the Department of Developmental Services, which assure provision of services to persons with developmental disabilities. Such centers will be referred to as regional centers in these regulations.

"Remodel" means to alter the facility structure by adding, deleting, or moving any of the buildings' components thereby affecting any of the spaces specified in Title 24, Section 2-470A.

"Repackaging," as it relates to managing legally obtained drugs, means the transferring of medications from the original manufacturers' container to another properly labeled container.

"Repair" means to restore to original condition or replace with like-in-kind.

"Safety checks" means regular, intermittent and prescribed direct, visual observation to provide for the health and welfare of inmates.

"Secure detention" means that a minor being held in temporary custody in a law enforcement facility is locked in a room or enclosure and/or is physically secured to a cuffing rail or other stationary object.

"Security glazing" means a glass/polycarbonate composite glazing material designed for use in detention facility doors and windows and intended to withstand measurable, complex loads from deliberate and sustained attacks in a detention environment.

"Sentenced inmate," means an inmate that is sentenced on all local charges.

"Shall" is mandatory; "may" is permissive.

"Sobering cell" as referenced in Section 1056, refers to an initial "sobering up" place for arrestees who are sufficiently intoxicated from any substance to require a protected environment to prevent injury by falling or victimization by other inmates.

"Storage," as it relates to legally obtained drugs, means the controlled physical environment used for the safekeeping and accounting of medications.

"Supervision in a law enforcement facility" means that a minor is being directly observed by the responsible individual in the facility to the extent that immediate intervention or other required action is possible.

"Supervisory custodial personnel" means those staff members whose duties include direct supervision of custodial personnel.

"Temporary custody" means that the minor is not at liberty to leave the law enforcement facility.

"Temporary Holding facility" means a local detention facility constructed after January 1, 1978, used for the confinement of persons for 24 hours or less pending release, transfer to another facility or appearance in court.

"Type I facility" means a local detention facility used for the detention of persons for not more than 96 hours excluding holidays after booking. Such a Type I facility may also detain persons on court order either for their own safekeeping or sentenced to a city jail as an inmate worker, and may house inmate workers sentenced to the county jail provided such placement in the facility is made on a voluntary basis on the part of the inmate. As used in this section, an inmate worker is defined as a person assigned to perform designated tasks outside of his/her cell or dormitory, pursuant to the written policy of the facility, for a minimum of four hours each day on a five day scheduled work week.

"Type II facility" means a local detention facility used for the detention of persons pending arraignment, during trial, and upon a sentence of commitment.

"Type III facility" means a local detention facility used only for the detention of convicted and sentenced persons.

"Type IV facility" means a local detention facility or portion thereof designated for the housing of inmates eligible under Penal Code Section 1208 for work/education furlough and/or other programs involving inmate access into the community.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

## 1007. Pilot Projects.

The pilot project is the short-term method used by a local detention facility/system, approved by the Corrections Standards Authority, to evaluate innovative programs, operations or concepts which meet or exceed the intent of these regulations.

The Corrections Standards Authority may, upon application of a city, county or city and county, grant pilot project status to a program, operational innovation or new concept related to the operation and management of a local detention facility. An application for a pilot project shall include, at a minimum, the following information:

   (a) The regulations which the pilot project will affect.

   (b) Review of case law, including any lawsuits brought against the applicant local detention facility, pertinent to the proposal.

   (c) The applicant's history of compliance or non-compliance with standards.

   (d) A summary of the "totality of conditions" in the facility or facilities, including but not limited to;

      (1) program activities, exercise and recreation;

      (2) adequacy of supervision;

      (3) types of inmates affected; and,

      (4) inmate classification procedures.

   (e) A statement of the goals the pilot project is intended to achieve, the reasons a pilot project is necessary and why the particular approach was selected.

   (f) The projected costs of the pilot project and projected cost savings to the city, county, or city and county, if any.

   (g) A plan for developing and implementing the pilot project including a time line where appropriate.

   (h) A statement of how the overall goal of providing safety to staff and inmates will be achieved.

The Corrections Standards Authority shall consider applications for pilot projects based on the relevance and appropriateness of the proposed project, the completeness of the information provided in the application, and staff recommendations.

Within 10 working days of receipt of the application, Board staff will notify the applicant, in writing, that the application is complete and accepted for filing, or that the application is being returned as deficient and identifying what specific additional information is needed. This does not preclude the Corrections Standards Authority members from requesting additional information necessary to make a determination that the pilot project proposed actually meets or exceeds the intent of these regulations at the time of the hearing. When complete, the application will be placed on the agenda for the Board's consideration at a regularly scheduled meeting. The written notification from the Board to the applicant shall also include the date, time and location of the meeting at which the application will be considered. (The Board meeting schedule for the current calendar year is available through its office in Sacramento.)

When an application for a pilot project is approved by the Corrections Standards Authority, the Board shall notify the applicant, in writing within 10 working days of the meeting, of any conditions included in the approval and the time period for the pilot project. Regular progress reports and evaluative data on the success of the pilot project in meeting its goals shall be provided to the Board. If disapproved, the applicant shall be notified in writing, within 10 working days of the meeting, the reasons for said disapproval. This application approval process may take up to 90 days from the date of receipt of a complete application.

Pilot project status granted by the Corrections Standards Authority shall not exceed twelve months after its approval date. When deemed to be in the best interest of the

application, the Corrections Standards Authority may extend the expiration date for up to an additional twelve months.  Once a city, county, or city and county successfully completes the pilot project evaluation period and desires to continue with the program, it may apply for an alternate means of compliance as described in Section 1008 of these regulations.

NOTE:  Authority cited:  Section 6030, Penal Code.  Reference:  Section 6029, Penal Code.

## 1008.  Alternate Means of Compliance.

The alternate means of compliance is the long-term method used by a local detention facility/system, approved by the Corrections Standards Authority, to encourage responsible innovation and creativity in the operation of California's local detention facilities.  The Corrections Standards Authority may, upon application of a city, county, or city and county, consider alternate means of compliance with these regulations after the pilot project process has been successfully evaluated (as defined in Section 1007).  The city, county, or city and county must present the completed application to the Corrections Standards Authority no later than 30 days prior to the expiration of its pilot project.

Applications for alternate means of compliance must meet the spirit and intent of improving jail management, shall be equal to or exceed the existing standard(s) and shall include reporting and evaluation components.  An application for alternate means of compliance shall include, at a minimum, the following information:

(a) Review of case law, including any lawsuits brought against the applicant local detention facility, pertinent to the proposal.

(b) The applicant's history of compliance or non-compliance with standards.

(c) A summary of the "totality of conditions" in the facility or facilities, including but not limited to:

    (1)   program activities, exercise and recreation;

    (2)   adequacy of supervision;

    (3)   types of inmates affected; and,

    (4)   inmate classification procedures.

(d) A statement of the problem the alternate means of compliance is intended to solve, how the alternative will contribute to a solution of the problem and why it is considered an effective solution.

(e) The projected costs of the alternative and projected cost savings to the city, county, or city and county if any.

(f) A plan for developing and implementing the alternative including a time line where appropriate.

(g) A statement of how the overall goal of providing safety to staff and inmates was achieved during the pilot project evaluation phase (Section 1007).

The Corrections Standards Authority shall consider applications for alternate means of compliance based on the relevance and appropriateness of the proposed alternative, the completeness of the information provided in the application, the experiences of the jurisdiction during the pilot project, and staff recommendations.

Within 10 working days of receipt of the application, Board staff will notify the applicant, in writing, that the application is complete and accepted for filing, or that the application is being returned as deficient and identifying what specific additional information is needed.  This does not preclude the Corrections Standards Authority members from

requesting additional information necessary to make a determination that the alternate means of compliance proposed meets or exceeds the intent of these regulations at the time of the hearing.  When complete, the application will be placed on the agenda for the Board's consideration at a regularly scheduled meeting.  The written notification from the Board to the applicant shall also include the date, time and location of the meeting at which the application will be considered.  (The Board meeting schedule for the current calendar year is available through its office in Sacramento.)

When an application for an alternate means of compliance is approved by the Corrections Standards Authority, the Board shall notify the applicant, in writing within 10 working days of the meeting, of any conditions included in the approval and the time period for which the alternate means of compliance shall be permitted.  The Corrections Standards Authority may require regular progress reports and evaluative data as to the success of the alternate means of compliance.  If disapproved, the applicant shall be notified in writing, within 10 working days of the meeting, the reasons for said disapproval.  This application approval process may take up to 90 days from the date of receipt of a complete application.

The Corrections Standards Authority may revise the minimum jail standards during the next biennial review (reference Penal Code Section 6030) based on data and information obtained during the alternate means of compliance process.  If, however, the alternate means of compliance does not have universal application, a city, county, or city and county may continue to operate under this status as long as they meet the terms of this regulation.

NOTE:  Authority cited:  Section 6030, Penal Code.  Reference:  Section 6029, Penal Code.

## ARTICLE 2. INSPECTION AND APPLICATION OF STANDARDS

### 1010.  Applicability of Standards.

(a)  All standards and requirements contained herein shall apply to Types I, II, III and IV facilities except as specifically noted in these regulations.

(b)  Court holding facilities shall comply with the following regulations:
  (1)  1012, Emergency Suspensions of Standards or Requirements
  (2)  1018, Appeal
  (3)  1024, Court Holding and Temporary Holding Facility Training
  (4)  1027, Number of Personnel
  (5)  1028, Fire and Life Safety Staff
  (6)  1029, Policy and Procedures Manual
  (7)  1032, Fire Suppression Preplanning
  (8)  1044, Incident Reports
  (9)  1046, Death in Custody
  (10)  1050, Classification Plan
  (11)  1051, Communicable Diseases
  (12)  1052, Mentally Disordered Inmates
  (13)  1053, Administrative Segregation
  (14)  1057, Developmentally Disabled Inmates
  (15)  1058, Use of Restraint Devices
  (16)  1068, Access to Courts and Counsel
  (17)  Title 24, Section 13-102(c)1, Letter of Intent

(18) Title 24, Section 13-102(c)3, Operational Program Statement
(19) Title 24, Section 13-102(c)5, Submittal of Plans and Specifications
(20) Title 24, Section 13-102(c)6C, Design Requirements
(21) Title 24, Section 470A.2, Design Criteria for Required Spaces
(22) Title 24, Section 470A.3, Design Criteria for Furnishings and Equipment
(23) 1200, Responsibility for Health Care Services
(24) 1219, Suicide Prevention Program
(25) 1220, First Aid Kit(s)
(26) 1246, Food Serving and Supervision
(27) 1280, Facility Sanitation, Safety, Maintenance

(c) In addition to the regulations cited above, court holding facilities that hold minors shall also comply with the following regulations:

(1) 1046, Death in Custody
(2) 1047, Serious Illness of a Minor in an Adult Detention Facility
(3) 1160, Purpose
(4) 1161, Conditions of Detention
(5) 1162, Supervision of Minors
(6) 1163, Classification

(d) Temporary holding facilities shall comply with the following regulations:

(1) 1012, Emergency Suspensions of Standards or Requirements
(2) 1018, Appeal
(3) 1024, Court Holding and Temporary Holding Facility Training
(4) 1027, Number of Personnel
(5) 1028, Fire and Life Safety Staff
(6) 1029, Policy and Procedures Manual
(7) 1032, Fire Suppression Preplanning
(8) 1044, Incident Reports
(9) 1046, Death in Custody
(10) 1050, Classification Plan
(11) 1051, Communicable Diseases
(12) 1052, Mentally Disordered Inmates
(13) 1053, Administrative Segregation
(14) 1057, Developmentally Disabled Inmates
(15) 1058, Use of Restraint Devices
(16) 1067, Access to Telephone
(17) 1068, Access to Courts and Counsel
(18) Title 24, Section 13-102(c)1, Letter of Intent
(19) Title 24, Section 13-102(c)3, Operational Program Statement
(20) Title 24, Section 13-102(c)5, Submittal of Plans and Specifications
(21) Title 24, Section 13-102(c)6C, Design Requirements
(22) Title 24, Section 470A.2, Design Criteria for Required Spaces
(23) Title 24, Section 470A.3, Design Criteria for Furnishings and Equipment
(24) 1200, Responsibility for Health Care Services
(25) 1207, Medical Receiving Screening
(26) 1209, Transfer to Treatment Facility
(27) 1212, Vermin Control

    (28)  1213, Detoxification Treatment
    (29)  1219, Suicide Prevention Program
    (30)  1220, First Aid Kit(s)
    (31)  1240, Frequency of Serving
    (32)  1241, Minimum Diet
    (33)  1243, Food Service Plan
    (34)  1246, Food Serving and Supervision
    (35)  1280, Facility Sanitation, Safety, Maintenance

(e) The following sections are applicable to temporary holding facilities where such procedural or physical plant items are utilized.
    (1)  1055, Use of Safety Cell
    (2)  1056, Use of Sobering Cell
    (3)  1058, Use of Restraint Devices
    (4)  1080, Rules and Disciplinary Penalties
    (5)  1081, Plan for Inmate Discipline
    (6)  1082, Forms of Discipline
    (7)  1083, Limitations on Disciplinary Actions
    (8)  1084, Disciplinary Records
    (9)  Title 24, Section 470A.2.1 Area for Reception and Booking
    (10)  Title 24, Section 470A.2.3 Sobering Cell
    (11)  Title 24, Section 470A.2.4 Safety Cell
    (12)  Title 24, Section 470A.3.4 Design Criteria for Showers
    (13)  Title 24, Section 470A.3.5 Design Criteria for Beds/Bunks
    (14)  Title 24, Section 470A.3.8 Design Criteria for Cell Padding
    (15)  1270, Standard Bedding and Linen Issue
    (16)  1272, Mattresses

(f) Law enforcement facilities, including lockups, that hold minors in temporary custody shall, in addition to the previously cited applicable regulations, comply with the following regulations:
    (1)  1046, Death in Custody
    (2)  1047, Serious Illness of a Minor in an Adult Detention Facility
    (3)  1140, Purpose
    (4)  1141, Minors Arrested for Law Violations
    (5)  1142, Written Policies and Procedures
    (6)  1143, Care of Minors in Temporary Custody
    (7)  1144, Contact Between Minors and Adult Prisoners
    (8)  1145, Decision on Secure Detention
    (9)  1146, Conditions of Secure Detention
    (10)  1147, Supervision of Minors Held Inside a Locked Enclosure
    (11)  1148, Supervision of Minors in Secure Detention Outside a Locked Enclosure
    (12)  1149, Criteria for Non-secure Custody
    (13)  1150, Supervision of Minors in Non-secure Custody
    (14)  1151, Intoxicated and Substance Abusing Minors in a Lockup

NOTE: Authority cited: Section 6030, Penal Code.  Reference: Section 6030, Penal Code.

### 1012.  Emergency Suspensions of Standards or Requirements.

Nothing contained herein shall be construed to deny the power to any facility administrator to temporarily suspend any standard or requirement herein prescribed in the event of any emergency which threatens the safety of a local detention facility, its inmates or staff, or the public.  Only such regulations directly affected by the emergency may be suspended.  The facility administrator shall notify the Corrections Standards Authority in writing in the event that such a suspension lasts longer than three days.  In no event shall such a suspension continue more than 15 days without the approval of the chairperson of the Corrections Standards Authority for a time specified by him/her.

NOTE:  Authority cited:  section 6030, Penal Code.  Reference:  Section 6030 Penal Code.

### 1013.  Criminal History Information.

Such criminal history information as is necessary for the conduct of facility inspections as specified in Section 6031.1 of the Penal Code and detention needs surveys as specified in Section 6029 of the Penal Code shall be made available to the staff of the Corrections Standards Authority.  Such information shall be held confidential except that published reports may contain such information in a form which does not identify an individual.

NOTE:  Authority cited:  Section 6030, Penal Code.  Reference:  Sections 6029, 6030, and 11105 Penal Code.

### 1016.  Contracts for Local Detention Facilities.

In the event that a county, city or city and county contracts for a local detention facility with a community-based public or private organization, compliance with appropriate Title 15 and Title 24 regulations shall be made a part of the contract. Nothing in this standard shall be construed as creating enabling language to broaden or restrict privatization of local detention facilities beyond that which is contained in statute.

NOTE:  Authority cited:  Section 6030, Penal Code.  Reference:  Sections 6029, 6030, and 11105 Penal Code.

### 1018.  Appeal.

The appeal hearing procedures are intended to provide a review concerning the Corrections Standards Authority application and enforcement of standards and regulations in local detention facilities and lockups.  A county, city, or city and county facility may appeal on the basis of alleged misapplication, capricious enforcement of regulations, or substantial differences of opinion as may occur concerning the proper application of regulations or procedures.
   (a) Levels of Appeal.
      (1) There are two levels of appeal as follows:
         (A) appeal to the Executive Director; and,
         (B) appeal to the Corrections Standards Authority.
      (2) An appeal shall first be filed with the Executive Director.
   (b) Appeal to the Executive Director.

(1) If a county, city, or city and county facility is dissatisfied with an action of the Corrections Standards Authority staff, it may appeal the cause of the dissatisfaction to the Executive Director. Such appeal shall be filed within 30 calendar days of the notification of the action with which the county or city is dissatisfied.

(2) The appeal shall be in writing and:

    (A) state the basis for the dissatisfaction;

    (B) state the action being requested of the Executive Director; and,

    (C) attach any correspondence or other documentation related to the cause for dissatisfaction.

(c) Executive Director Appeal Procedures.

(1) The Executive Director shall review the correspondence and related documentation and render a decision on the appeal within 30 calendar days except in those cases where the appellant withdraws or abandons the appeal.

(2) The procedural time requirement may be waived with the mutual consent of the appellant and the Executive Director.

(3) The Executive Director may render a decision based on the correspondence and related documentation provided by the appellant and may consider other relevant sources of information deemed appropriate.

(d) Executive Director's Decision.

The decision of the Executive Director shall be in writing and shall provide the rationale for the decision.

(e) Request for Appeal Hearing by Board.

(1) If a county, city, or city and county facility is dissatisfied with the decision of the Executive Director, it may file a request for an appeal hearing with the Corrections Standards Authority. Such appeal shall be filed within 30 calendar days after receipt of the Executive Director's decision.

(2) The request shall be in writing and:

    (A) state the basis for the dissatisfaction;

    (B) state the action being requested of the Board; and,

    (C) attach any correspondence related to the appeal from the Executive Director.

(f) Board Hearing Procedures.

(1) The hearing shall be conducted by a hearing panel designated by the Chairman of the Board at a reasonable time, date, and place, but not later than 21 days after the filing of the request for hearing with the Board, unless delayed for good cause. The Board shall mail or deliver to the appellant or authorized representative a written notice of the time and place of hearing not less than 7 days prior to the hearing.

(2) The procedural time requirements may be waived with mutual consent of the parties involved.

(3) Appeal hearing matters shall be set for hearing, heard, and disposed of by a notice of decision within 60 days from the date of the request for appeal hearing, except in those cases where the appellant withdraws or abandons the request for hearing or the matter is continued for what is determined by the hearing panel to be good cause.

(4) An appellant may waive a personal hearing before the hearing panel and, under such circumstances, the hearing panel shall consider the written information submitted by the appellant and other relevant information as may be deemed appropriate.

(5) The hearing is not formal or judicial in nature. Pertinent and relative information, whether written or oral, shall be accepted. Hearings shall be tape recorded.

(6) After the hearing has been completed, the hearing panel shall submit a proposed decision in writing to the Corrections Standards Authority at its next regular public meeting.

(g) Corrections Standards Authority Decision.

(1) The Corrections Standards Authority, after receiving the proposed decision, may:

(A) adopt the proposed decision;

(B) decide the matter on the record with or without taking additional evidence; or,

(C) order a further hearing to be conducted if additional information is needed to decide the issue.

(2) the Board, or notice of a new hearing ordered, notice of decision or other such actions shall be mailed or otherwise delivered by the Board to the appellant.

(3) The record of the testimony exhibits, together with all papers and requests filed in the proceedings and the hearing panel's proposed decision, shall constitute the exclusive record for decision and shall be available to the appellant at any reasonable time for one year after the date of the Board's notice of decision in the case.

(4) The decision of the Corrections Standards Authority shall be final.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

## ARTICLE 3. TRAINING, PERSONNEL, AND MANAGEMENT

### 1020. Corrections Officer Core Course.

(a) In addition to the provisions of California Penal Code Section 831.5, all custodial personnel of a Type I, II, III, or IV facility shall successfully complete the "Corrections Officer Core Course" as described in Section 179 of Title 15, CCR, within one year from the date of assignment.

(b) Custodial Personnel who have successfully completed the course of instruction required by Penal Code Section 832.3 shall also successfully complete the "Corrections Officer Basic Academy Supplemental Core Course" as described in Section 180 of Title 15, CCR, within one year from the date of assignment.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

### 1021. Jail Supervisory Training.

Prior to assuming supervisory duties, jail supervisors shall complete the core training requirements pursuant to Section 1020, Corrections Officer Core Course. In addition, supervisory personnel of any Type I, II, III or IV jail shall also be required to complete either

the STC Supervisory Course (as described in Section 181, Title 15, CCR) or the POST supervisory course within one year from date of assignment.

NOTE: Authority cited: Section 6030, 6031.6 and 6035, Penal Code. Reference: Section 6030, Penal Code.

### 1023.   Jail Management Training.

Managerial personnel of any Type I, II, III or IV jail shall be required to complete either the STC management course (as described in Section 182, Title 15, CCR) or the POST management course within one year from date of assignment.

NOTE: Authority cited: Section 6030, 6031.6 and 6035, Penal Code. Reference: Section 6030, Penal Code.

### 1024.   Court Holding and Temporary Holding Facility Training.

Custodial personnel who are responsible for supervising inmates in, and supervisors of, a Court Holding or Temporary Holding facility shall complete 8 hours of specialized training. Such training shall include, but not be limited to:
(a)  applicable minimum jail standards;
(b)  jail operations liability;
(c)  inmate segregation;
(d)  emergency procedures and planning; and,
(e)  suicide prevention.
Such training shall be completed as soon as practical, but in any event not more than six months after the date of assigned responsibility, or the effective date of this regulation. Eight hours of refresher training shall be completed once every two years.

Each agency shall determine if additional training is needed based upon, but not limited to, the complexity of the facility, the number of inmates, the employees' level of experience and training, and other relevant factors.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

### 1025.   Continuing Professional Training.

With the exception of any year that a core training module is successfully completed, all facility/system administrators, managers, supervisors, and custody personnel of a Type I, II, III, or IV facility shall successfully complete the "annual required training" specified in Section 184 of Title 15, CCR.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

### 1027.   Number of Personnel.

A sufficient number of personnel shall be employed in each local detention facility to conduct at least hourly safety checks of inmates through direct visual observation of all inmates and to ensure the implementation and operations of the programs and activities

required by these regulations. There shall be a written plan that includes the documentation of routine safety checks.

Whenever there is an inmate in custody, there shall be at least one employee on duty at all times in a local detention facility or in the building which houses a local detention facility who shall be immediately available and accessible to inmates in the event of an emergency. Such an employee shall not have any other duties which would conflict with the supervision and care of inmates in the event of an emergency. Whenever one or more female inmates are in custody, there shall be at least one female employee who shall in like manner be immediately available and accessible to such females.

Additionally, in Type IV programs the administrator shall ensure a sufficient number of personnel to provide case review, program support, and field supervision.

In order to determine if there is a sufficient number of personnel for a specific facility, the facility administrator shall prepare and retain a staffing plan indicating the personnel assigned in the facility and their duties. Such a staffing plan shall be reviewed by the Corrections Standards Authority staff at the time of their biennial inspection. The results of such a review and recommendations shall be reported to the local jurisdiction having fiscal responsibility for the facility.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 6030, 6031 and 6031.1, Penal Code.

## 1028.   Fire and Life Safety Staff.

Pursuant to Penal Code Section 6030(c), effective January 1, 1980, whenever there is an inmate in custody, there shall be at least one person on duty at all times who meets the training standards established by the Corrections Standards Authority for general fire and life safety. The facility manager shall ensure that there is at least one person on duty who trained in fire and life safety procedures that relate specifically to the facility.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

## 1029.   Policy and Procedures Manual.

Facility administrator(s) shall develop and publish a manual of policy and procedures for the facility. The policy and procedures manual shall address all applicable Title 15 and Title 24 regulations and shall be comprehensively reviewed and updated at least every two years. Such a manual shall be made available to all employees.

(a) The manual for Temporary Holding, Type I, II, and III facilities shall provide for, but not be limited to, the following:

(1) Table of organization, including channels of communications.

(2) Inspections and operations reviews by the facility administrator/manager.

(3) Policy on the use of force.

(4) Policy on the use of restraint equipment, including the restraint of pregnant inmates as referenced in Penal Code Section 6030(f).

(5) Procedure and criteria for screening newly received inmates for release per Penal Code sections 849(b)(2) and 853.6, and any other such processes as the facility administrator is empowered to use.

(6) Security and control including physical counts of inmates, searches of the facility and inmates, contraband control, and key control. Each facility administrator shall, at least annually, review, evaluate, and make a record of security measures. The review and evaluation shall include internal and external security measures of the facility.

(7) Emergency procedures include:

   (A) fire suppression preplan as required by section 1032 of these regulations;

   (B) escape, disturbances, and the taking of hostages;

   (C) civil disturbance;

   (D) natural disasters;

   (E) periodic testing of emergency equipment; and,

   (F) storage, issue, and use of weapons, ammunition, chemical agents, and related security devices.

(8) Suicide Prevention.

(9) Segregation of Inmates.

The policies and procedures required in subsections (6) and (7) may be placed in a separate manual to ensure confidentiality.

(b) The manual for court holding facilities shall include all of the procedures listed in subsection (a), except number (5)

(c) The manual for Type IV facilities shall include, in addition to the procedures required in subsection (a), except number (5), procedures for:

   (1) accounting of inmate funds;

   (2) community contacts;

   (3) field supervision;

   (4) temporary release; and

   (5) obtaining health care.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

## 1032. Fire Suppression Preplanning.

Pursuant to Penal Code Section 6031.1(b), the facility administrator shall consult with the local fire department having jurisdiction over the facility, with the State Fire Marshal, or both, in developing a plan for fire suppression which shall include, but not be limited to:

(a) a fire suppression pre-plan by the local fire department to be included as part of the manual of policy and procedures (15 California Code of Regulations 1029);

(b) regular fire prevention inspections by facility staff on a monthly basis with two year retention of the inspection record;

(c) fire prevention inspections as required by Health and Safety Code Section 13146.1(a) and (b) which requires inspections at least once every two years;

(d) an evacuation plan; and,

(e) a plan for the emergency housing of inmates in the case of fire.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Sections 6030 and 6031.1, Penal Code.

## ARTICLE 4. RECORDS AND PUBLIC INFORMATION

### 1040.   Population Accounting.

Except in court holding and temporary holding facilities, each facility administrator shall maintain an inmate demographics accounting system which reflects the monthly average daily population of sentenced and non-sentenced inmates by categories of male, female and juvenile.   Facility administrators shall provide the Corrections Standards Authority with applicable inmate demographic information as described in the Jail Profile Survey.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

### 1041.   Inmate Records.

Each facility administrator of a Type I, II, III or IV facility shall develop written policies and procedures for the maintenance of individual inmate records which shall include, but not be limited to, intake information, personal property receipts, commitment papers, court orders, reports of disciplinary actions taken, medical orders issued by the responsible physician and staff response, and non-medical information regarding disabilities and other limitations.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

### 1044.   Incident Reports.

Each facility administrator shall develop written policies and procedures for the maintenance of written records of all incidents which result in physical harm, or serious threat of physical harm, to an employee or inmate of a detention facility or other person. Such records shall include the names of the persons involved, a description of the incident, the actions taken, and the date and time of the occurrence.   Such a written record shall be prepared by the staff assigned to investigate the incident and submitted to the facility manager or his/her designee within 24 hours of the event of an incident.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

### 1045.   Public Information Plan.

Each facility administrator of a Type I, II, III or IV facility shall develop written policies and procedures for the dissemination of information to the public, to other government agencies, and to the news media.  The public and inmates shall have available for review the following material:
- (a) The State Corrections Standards Authority minimum standards for local detention facilities as found in Title 15 of the California Code of Regulations.
- (b) Facility rules and procedures affecting inmates as specified in sections:
  - (1)   1045, Public Information Plan
  - (2)   1061, Inmate Education Plan

(3)  1062, Visiting
(4)  1063, Correspondence
(5)  1064, Library Service
(6)  1065, Exercise and Recreation
(7)  1066, Books, Newspapers, Periodicals and Writings
(8)  1067, Access to Telephone
(9)  1068, Access to Courts and Counsel
(10)  1069, Inmate Orientation
(11)  1070, Individual/Family Service Programs
(12)  1071, Voting
(13)  1072, Religious Observance
(14)  1073, Inmate Grievance Procedure
(15)  1080, Rules and Disciplinary Penalties
(16)  1081, Plan for Inmate Discipline
(17)  1082, Forms of Discipline
(18)  1083, Limitations on Discipline
(19)  1200, Responsibility for Health Care Services

NOTE:  Authority cited:  Section 6030, Penal Code.  Reference:  Section 6030, Penal Code.

**1046.  Death in Custody.**

(a)  Death in Custody Reviews for Adults and Minors.
  The facility administrator, in cooperation with the health administrator, shall develop written policy and procedures to assure that there is a review of every in-custody death.  The review team shall include the facility administrator and/or the facility manager, the health administrator, the responsible physician and other health care and supervision staff who are relevant to the incident.
(b)  Death of a Minor
  In any case in which a minor dies while detained in a jail, lockup, or court holding facility:
  (1)  The administrator of the facility shall provide to the Corrections Standards Authority a copy of the report submitted to the Attorney General under Government Code Section 12525.  A copy of the report shall be submitted to the Board within 10 calendar days after the death.
  (2)  Upon receipt of a report of death of a minor from the administrator, the Board may within 30 calendar days inspect and evaluate the jail, lockup, or court holding facility pursuant to the provisions of this subchapter.  Any inquiry made by the Board shall be limited to the standards and requirements set forth in these regulations.

NOTE:  Authority cited:  Section 6030, Penal Code.  Reference:  Section 6030, Penal Code.

**1047.  Serious Illness or Injury of a Minor in an Adult Detention Facility.**

The facility administrator shall develop policy and procedures for notification of the court of jurisdiction and the parent, guardian, or person standing in loco parentis, in the event of a suicide attempt, serious illness, injury or death of a minor in custody.

NOTE: Authority cited: Section 6030, Penal Code.  Reference: Section 6030, Penal Code.

## ARTICLE 5. CLASSIFICATION AND SEGREGATION

**1050.  Classification Plan.**

(a) Each administrator of a temporary holding, Type I, II, or III facility shall develop and implement a written classification plan designed to properly assign inmates to housing units and activities according to the categories of sex, age, criminal sophistication, seriousness of crime charged, physical or mental health needs, assaultive/non-assaultive behavior and other criteria which will provide for the safety of the inmates and staff.  Such housing unit assignment shall be accomplished to the extent possible within the limits of the available number of distinct housing units or cells in a facility.

    The written classification plan shall be based on objective criteria and include receiving screening performed at the time of intake by trained personnel, and a record of each inmate's classification level, housing restrictions, and housing assignments.

    Each administrator of a Type II or III facility shall establish and implement a classification system which will include the use of classification officers or a classification committee in order to properly assign inmates to housing, work, rehabilitation programs, and leisure activities.  Such a plan shall include the use of as much information as is available about the inmate and from the inmate and shall provide for a channel of appeal by the inmate to the facility administrator.  An inmate who has been sentenced to more than 60 days may request a review of his classification plan no more than 30 days from his last review.

(b) Each administrator of a court holding facility shall establish and implement a written plan designed to provide for the safety of staff and inmates held at the facility.  The plan shall include receiving and transmitting of information regarding inmates who represent unusual risk or hazard while confined at the facility, and the segregation of such inmates to the extent possible within the limits of the court holding facility.

NOTE: Authority cited: Section 6030, Penal Code.  Reference: Section 6030, Penal Code.

**1051.  Communicable Diseases.**

The facility administrator, in cooperation with the responsible physician, shall develop written policies and procedures which require that all inmates with suspected communicable diseases shall be segregated until a medical evaluation is completed.  To determine if such segregation shall be made in the absence of medically trained personnel at the time of intake into the facility, an inquiry shall be made of the person being booked as to whether or not

he/she has or has had any communicable diseases or has observable symptoms of communicable diseases, including but not limited to, tuberculosis, other airborne diseases, or other special medical problem identified by the health authority. The response shall be noted on the booking form and/or screening device.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

## 1052.   Mentally Disordered Inmates.

The facility administrator, in cooperation with the responsible physician, shall develop written policies and procedures to identify and evaluate all mentally disordered inmates. If an evaluation from medical or mental health staff is not readily available, an inmate shall be considered mentally disordered for the purpose of this section if he or she appears to be a danger to himself/herself or others or if he/she appears gravely disabled. An evaluation from medical or mental health staff shall be secured within 24 hours of identification or at the next daily sick call, whichever is earliest. Segregation may be used if necessary to protect the safety of the inmate or others.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code

## 1053.   Administrative Segregation.

Except in Type IV facilities, each facility administrator shall develop written policies and procedures which provide for the administrative segregation of inmates who are determined to be prone to: escape; assault staff or other inmates; disrupt the operations of the jail, or likely to need protection from other inmates, if such administrative segregation is determined to be necessary in order to obtain the objective of protecting the welfare of inmates and staff. Administrative segregation shall consist of separate and secure housing but shall not involve any other deprivation of privileges than is necessary to obtain the objective of protecting the inmates and staff.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

## 1054.   Administrative Removal – Type IV Facility.

In Type IV facilities, the facility administrator shall develop written policies and procedures which provide for the administrative removal of an inmate for the safety and well being of the inmate, the staff, the program, the facility, and/or the general public. Such removal shall be subject to review by the facility administrator on the next business day.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

**1055.   Use of Safety Cell.**

The safety cell described in Title 24, Part II, Section 1231.2.5, shall be used to hold only those inmates who display behavior which results in the destruction of property or reveals an intent to cause physical harm to self or others.  The facility administrator, in cooperation with the responsible physician, shall develop written policies and procedures governing safety cell use and may delegate authority to place an inmate in a safety cell to a physician.

In no case shall the safety cell be used for punishment or as a substitute for treatment.

An inmate shall be placed in a safety cell only with the approval of the facility manager, the facility watch commander, or the designated physician.  Continued retention in a safety cell shall be reviewed a minimum of every eight hours.  A medical assessment shall be completed within a maximum of 12 hours of placement in the safety cell or at the next daily sick call, whichever is earliest.  The inmate shall be medically cleared for continued retention every 24 hours thereafter.  A mental health opinion on placement and retention shall be secured within 24 hours of placement.  Direct visual observation shall be conducted at least twice every thirty minutes.  Such observation shall be documented.

Procedures shall be established to assure administration of necessary nutrition and fluids. Inmates shall be allowed to retain sufficient clothing, or be provided with a suitably designed "safety garment," to provide for their personal privacy unless specific identifiable risks to the inmate's safety or to the security of the facility are documented.

NOTE:  Authority cited:  Section 6030, Penal Code.  Reference:  Section 6030, Penal Code.

**1056.   Use of Sobering Cell.**

The sobering cell described in Title 24, Part II, Section 1231.2.4, shall be used for the holding of inmates who are a threat to their own safety or the safety of others due to their state of intoxication and pursuant to written policies and procedures developed by the facility administrator.  Such inmates shall be removed from the sobering cell as they are able to continue in the processing.  In no case shall an inmate remain in a sobering cell over six hours without an evaluation by a medical staff person or an evaluation by custody staff, pursuant to written medical procedures in accordance with section 1213 of these regulations, to determine whether the prisoner has an urgent medical problem.  Intermittent direct visual observation of inmates held in the sobering cell shall be conducted no less than every half hour.

NOTE:  Authority cited:  Section 6030, Penal Code.  Reference:  Section 6030, Penal Code.

**1057.   Developmentally Disabled Inmates.**

The facility administrator, in cooperation with the responsible physician, shall develop written policies and procedures for the identification and evaluation of all developmentally disabled inmates.

The health authority or designee shall contact the regional center on any inmate suspected or confirmed to be developmentally disabled for the purposes of diagnosis and/or treatment within 24 hours of such determination, excluding holidays and weekends.

NOTE:  Authority cited:  Section 6030, Penal Code.  Reference:  Section 6030, Penal Code.

### 1058.   Use of Restraint Devices.

The facility administrator, in cooperation with the responsible physician, shall develop written policies and procedures for the use of restraint devices and may delegate authority to place an inmate in restraints to a physician.  In addition to the areas specifically outlined in this regulation, at a minimum, the policy shall address the following areas:   acceptable restraint devices; signs or symptoms which should result in immediate medical/mental health referral; availability of cardiopulmonary resuscitation equipment; protective housing of restrained persons; provision for hydration and sanitation needs; and exercising of extremities.

Restraint devices shall only be used on inmates who display behavior which results in the destruction of property or reveal an intent to cause physical harm to self or others.  Restraint devices include any devices which immobilize an inmate's extremities and/or prevent the inmate from being ambulatory.  Physical restraints should be utilized only when it appears less restrictive alternatives would be ineffective in controlling the disordered behavior.

Inmates shall be placed in restraints only with the approval of the facility manager, the facility watch commander, or the designated physician.  Continued retention in restraints shall be reviewed a minimum of every two hours.  A medical opinion on placement and retention shall be secured as soon as possible, but no later than four hours from the time of placement.  The inmate shall be medically cleared for continued retention at least every six hours thereafter.  A mental health consultation shall be secured as soon as possible, but in no case longer than eight hours from the time of placement, to assess the need for mental health treatment.

Direct visual observation shall be conducted at least twice every thirty minutes to ensure that the restraints are properly employed, and to ensure the safety and well-being of the inmate.  Such observation shall be documented.  While in restraint devices all inmates shall be housed alone or in a specified housing area for restrained inmates which makes provision to protect the inmate from abuse.  In no case shall restraints be used for discipline, or as a substitute for treatment.

The provisions of this section do not apply to the use of handcuffs, shackles or other restraint devices when used to restrain inmates for security reasons.

NOTE: Authority cited:  Section 6030, Penal Code.  Reference:  Section 6030, Penal Code.

### 1059.   DNA Collection, Use of Force.

(a) Pursuant to Penal Code Section 298.1, authorized law enforcement, custodial, or corrections personnel including peace officers, may employ reasonable force to collect blood specimens, saliva samples, or thumb or palm print impressions from individuals who are required to provide such samples, specimens or impressions pursuant to Penal Code Section 296 and who refuse following written or oral request.

    (1) For the purpose of this regulation, the "use of reasonable force" shall be defined as the force that an objective, trained and competent correctional employee, faced with similar facts and circumstances, would consider necessary and reasonable to gain compliance with this regulation.

    (2) The use of reasonable force shall be preceded by efforts to secure voluntary compliance. Efforts to secure voluntary compliance shall be documented and include an advisement of the legal obligation to provide the requisite specimen, sample or impression and the consequences of refusal.

(b) The force shall not be used without the prior written authorization of the supervising officer on duty. The authorization shall include information that reflects the fact that the offender was asked to provide the requisite specimen, sample, or impression and refused.

(c) If the use of reasonable force includes a cell extraction, the extraction shall be videotaped, including audio. Video shall be directed at the cell extraction event. The videotape shall be retained by the agency for the length of time required by statute. Notwithstanding the use of the video as evidence in a criminal proceeding, the tape shall be retained administratively.

NOTE: Authority cited: Section 298.1, Penal Code. Reference: Section 6030, Penal Code.

## ARTICLE 6. INMATE PROGRAMS AND SERVICES

### 1061. Inmate Education Plan.

    The facility administrator of any Type II or III facility shall plan and shall request of appropriate public officials an inmate education program. When such services are not made available by the appropriate public officials, then the facility administrator shall develop and implement an education program with available resources. Such a plan shall provide for the voluntary academic and/or vocational education of both sentenced and non-sentenced inmates. Reasonable criteria for eligibility shall be established and an inmate may be excluded or removed from any class based on sound security practices or failure to abide by facility rules and regulations.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

### 1062. Visiting.

(a) The facility administrator shall develop written policies and procedures for inmate visiting which shall provide for as many visits and visitors as facility schedules, space, and number of personnel will allow. For sentenced inmates in Type I facilities and all inmates in Type II facilities there shall be allowed no fewer than two visits totaling at least one hour per inmate each week. In Type III and Type IV facilities there shall be allowed one or more visits, totaling at least one hour, per week.

(b) In Type I facilities, the facility administrator shall develop and implement written policies and procedures to allow visitation for non-sentenced detainees. The policies and procedures will include a schedule to assure that non-sentenced detainees will be afforded a visit no later than the calendar day following arrest.

(c) The visitation policies developed pursuant to this section shall include provision for visitation by minor children of the inmate.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

### 1063. Correspondence.

The facility administrator shall develop written policies and procedures for inmate correspondence which provide that:
(a) there is no limitation on the volume of mail that an inmate may send or receive;
(b) inmate mail may be read when there is a valid security reason and the facility manager or his/her designee approves;
(c) jail staff shall not review inmate correspondence to or from state and federal courts, any member of the State Bar or holder of public office, and the State Corrections Standards Authority; however, jail authorities may open and inspect such mail only to search for contraband, cash, checks, or money orders and in the presence of the inmate;
(d) inmates may correspond, confidentially, with the facility manager or the facility administrator; and,
(e) those inmates who are without funds shall be permitted at least two postage paid letters each week to permit correspondence with family members and friends but without limitation on the number of postage paid letters to his or her attorney and to the courts.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

### 1064. Library Service.

The facility administrator shall develop written policies and procedures for library service in all Type II, III, and IV facilities. The scope of such service shall be determined by the facility administrator. The library service shall include access to legal reference materials, current information on community services and resources, and religious, educational, and recreational reading material. In Type IV facilities such a program can be either in-house or provided through access to the community.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

### 1065. Exercise and Recreation.

(a) The facility administrator of a Type II or III facility shall develop written policies and procedures for an exercise and recreation program, in an area designed for recreation, which will allow a minimum of three hours of exercise distributed over a period of seven days. Such regulations as are reasonable and necessary to protect the facility's security and the inmates' welfare shall be included in such a program. In Type IV facilities, such a program can be either in-house or provided through access to the community.
(b) The facility administrator of a Type I facility shall make table games and/or television available to inmates.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

**1066.  Books, Newspapers, Periodicals, and Writings.**

(a) The facility administrator of a Type II or III facility shall develop written policies and procedures which will permit inmates to purchase, receive and read any book, newspaper, periodical, or writing accepted for distribution by the United States Postal Service.  Nothing herein shall be construed as limiting the right of the facility administrator to:

  (1) exclude any publications or writings based on any legitimate penological interest;

  (2) exclude obscene publications or writings, and mail containing information concerning where, how, or from whom such matter may be obtained; and any matter of a character tending to incite murder, arson, riot, violent racism, or any other form of violence; any matter of a character tending to incite crimes against children; any matter concerning unlawful gambling or an unlawful lottery; the manufacture or use of weapons, narcotics, or explosives; or any other unlawful activity;

  (3) open and inspect any publications or packages received by an inmate;  and

  (4) restrict the number of books, newspapers, periodicals, or writings the inmate may have in his/her cell or elsewhere in the facility at one time.

(b) The facility administrator of a Type I facility shall develop and implement a written plan to make available a daily newspaper in general circulation, including a non-English language publication, to assure reasonable access to interested inmates.

NOTE:  Authority cited:  Section 6030, Penal Code.  Reference:  Section 6030, Penal Code.

**1067.  Access to Telephone.**

  The facility administrator shall develop written policies and procedures which allow reasonable access to a telephone beyond those telephone calls which are required by Section 851.5 of the Penal Code.

NOTE:  Authority cited:  Section 6030, Penal Code.  Reference:  Section 6030, Penal Code.

**1068.  Access to the Courts and Counsel.**

  The facility administrator shall develop written policies and procedures to ensure inmates have access to the court and to legal counsel.  Such access shall consist of:

  (a) unlimited mail as provided in Section 1063 of these regulations, and,

  (b) confidential consultation with attorneys.

NOTE:  Authority cited:  Section 6030, Penal Code.  Reference:  Section 6030, Penal Code.

**1069.  Inmate Orientation.**

(a) In Type II, III, and IV facilities, the facility administrator shall develop written policies and procedures for the implementation of a program reasonably

understandable to inmates designed to orient a newly received inmate at the time of placement in a living area. Such a program shall be published and include, but not be limited to, the following:

(1) correspondence, visiting, and telephone usage rules;
(2) rules and disciplinary procedures;
(3) inmate grievance procedures;
(4) programs and activities available and method of application;
(5) medical services;
(6) classification/housing assignments; and,
(7) court appearance where scheduled, if known.

(b) In Type I facilities, the facility administrator shall develop written policies and procedures for a program reasonably understandable to non-sentenced detainees to orient an inmate at the time of placement in a living area. Such a program shall be published and include, but not be limited to, the following:

(1) rules and disciplinary procedures;
(2) visiting rules;
(3) availability of personal care items, opportunities for personal hygiene;
(4) availability of reading and recreational materials; and,
(5) medical/mental health procedures.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

## 1070. Individual/Family Service Programs.

The facility administrator of a Type II, III, or IV facility shall develop written policies and procedures which facilitate cooperation with appropriate public or private agencies for individual and/or family social service programs for inmates. Such a program shall utilize the services and resources available in the community and may be in the form of a resource guide and/or actual service delivery. The range and source of such services shall be at the discretion of the facility administrator and may include:

(a) individual, group and/or family counseling;
(b) drug and alcohol abuse counseling;
(c) community volunteers;
(d) vocational testing and counseling;
(e) employment counseling;
(f) referral to community resources and programs;
(g) prerelease and release assistance;
(h) legal assistance; and,
(i) regional center services for the developmentally disabled.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

## 1071. Voting.

The facility administrator of a Type I (holding sentenced inmate workers) II, III or IV facility shall develop written policies and procedures whereby the county registrar of voters

allows qualified voters to vote in local, state, and federal elections, pursuant to election codes.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

**1072. Religious Observance.**

The facility administrator of a Type I, II, III or IV facility shall develop written policies and procedures to provide opportunities for inmates to participate in religious services and counseling on a voluntary basis.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

**1073. Inmate Grievance Procedure.**

(a) Each administrator of a Type II, III, or IV facility and Type I facilities which hold inmate workers shall develop written policies and procedures whereby any inmate may appeal and have resolved grievances relating to any conditions of confinement, included but not limited to: medical care; classification actions; disciplinary actions; program participation; telephone, mail, and visiting procedures; and food, clothing, and bedding. Such policies and procedures shall include:
  (1) a grievance form or instructions for registering a grievance;
  (2) resolution of the grievance at the lowest appropriate staff level;
  (3) appeal to the next level of review;
  (4) written reasons for denial of grievance at each level of review which acts on the grievance;
  (5) provision for response within a reasonable time limit; and,
  (6) provision for resolving questions of jurisdiction within the facility.
(b) Grievance System Abuse:
  The facility may establish written policy and procedure to control the submission of an excessive number of grievances.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

**ARTICLE 7. DISCIPLINE**

**1080. Rules and Disciplinary Penalties.**

Wherever discipline is administered, each facility administrator shall establish written rules and disciplinary penalties to guide inmate conduct. Such rules and disciplinary penalties shall be stated simply and affirmatively, and posted conspicuously in housing units and the booking area or issued to each inmate upon booking. For those inmates who are illiterate or unable to read English, and for persons with disabilities, provision shall be made for the jail staff to verbally instruct them or provide them with material in an understandable form regarding jail rules and disciplinary procedures and penalties.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

**1081. Plan for Inmate Discipline.**

Each facility administrator shall develop written policies and procedures for inmate discipline which shall include, but not be limited to, the following elements:

(a) Designation of one or more subordinates who will act on all formal charges of violation of facility rules by inmates, and who shall have investigative and punitive powers. Staff so designated shall not participate in disciplinary review if they are involved in the charges.

(b) Minor acts of non-conformance or minor violations of institution rules may be handled informally by any staff member by counseling or advising the inmate of expected conduct, assignment to an extra work detail or removal from a work assignment without loss of work time credit. In addition, temporary loss of privileges such as, but not limited to, access to television, telephones, or commissary, or lockdown for less than 24 hours, may be considered minor discipline if such acts are accompanied by written documentation, and a policy of review and appeal to a supervisor.

(c) Major violations or repetitive minor acts of non-conformance or repetitive minor violations of institutional rules shall be reported in writing by the staff member observing the act and submitted to the disciplinary officer. The inmate shall be informed of the charge(s) in writing. The consequences of a major violation may include, but are not limited to, loss of good time/work time, placement in disciplinary isolation, disciplinary isolation diet, or loss of privileges mandated by regulations. In addition:

  (1) charges pending against an inmate shall be acted on no sooner than 24 hours after the report has been submitted to the disciplinary officer and the inmate has been informed of the charges in writing. A violation(s) shall be acted on no later than 72 hours after an inmate has been informed of the charge(s) in writing. The inmate may waive the 24-hour limitation. The hearing may be postponed or continued for a reasonable time through a written waiver by the inmate or for good cause.

  (2) The inmate shall be permitted to appear on his own behalf at the time of hearing.

  (3) Subsequent to final disposition of disciplinary charges by the disciplinary officer, the charges and the action taken shall be reviewed by the facility manager or designee.

  (4) The inmate shall be advised of the action taken by the disciplinary officer by a copy of the record required to kept by Penal Code section 4019.5.

(d) Nothing in this section precludes a facility administrator from administratively removing any inmate from the general population or program for reasons of personal, mental, or physical health, or under any circumstance in which the safety of the inmates, staff, program, or community is endangered, pending disciplinary action or a review as required by section 1054 of these regulations.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

### 1082.  Forms of Discipline.

The degree of punitive actions taken by the disciplinary officer shall be directly related to the severity of the rule infraction.  Acceptable forms of discipline shall consist of, but not be limited to, the following:
(a) Loss of privileges.
(b) Extra work detail.
(c) Short term lockdown for less than 24 hours.
(d) Removal from work details.
(e) Forfeiture of "good time" credits earned under Penal Code Section 4019.
(f) Forfeiture of "work time" credits earned under Penal Code Section 4019.
(g) Disciplinary isolation.
(h) Disciplinary isolation diet.

NOTE:  Authority cited:  Section 6030, Penal Code.  Reference:  Section 6030, Penal Code.

### 1083.  Limitations on Disciplinary Actions.

The Penal Code and the State Constitution expressly prohibit all cruel or unusual punishment.  Additionally, there shall be the following limitations:
(a) If an inmate is on disciplinary isolation status for 30 consecutive days there shall be a review by the facility manager before the disciplinary isolation status is continued.  This review shall include a consultation with health care staff.  Such reviews shall continue at least every fifteen days thereafter until the disciplinary status has ended.
(b) The disciplinary isolation cells or cell shall have the minimum furnishings and space specified in title 24, 470A.2.6 and 2.7.  Occupants shall be issued clothing and bedding as specified in articles 12 and 13 of these regulations and shall not be deprived of them through any portion of the day except that those inmates who engage in the destruction of bedding or clothing may be deprived of such articles.  The decision to deprive inmates of such articles of clothing or bedding shall be reviewed by the facility manager or designee during each 24 hour period.
(c) Penal Code section 4019.5 expressly prohibits the delegation of authority to any inmate or group of inmates to exercise the right of punishment over any other inmate or group of inmates.
(d) In no case shall a safety cell, as specified in title 24, 470A.2.5, or any restraint device be used for disciplinary purposes.
(e) No inmate may be deprived of the implements necessary to maintain an acceptable level of personal hygiene as specified in section 1265 of these regulations.
(f) Food shall not be withheld as a disciplinary measure.
(g) The disciplinary isolation diet described in section 1247 of these regulations shall only be utilized for major violations of institutional rules.
    (1) In addition to the provisions of section 1247, the facility manager shall approve the initial placement on the disciplinary isolation diet and ensure that medical staff is notified.

(2) In consultation with medical care staff, the facility manager shall approve any continuation on that diet every 72 hours after the initial placement.

(h) Correspondence privileges shall not be withheld except in cases where the inmate has violated correspondence regulations, in which case correspondence may be suspended for no longer than 72 hours, without the review and approval of the facility manager.

(i) In no case shall access to courts and legal counsel be suspended as a disciplinary measure.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

### 1084. Disciplinary Records.

Penal Code section 4019.5 requires the keeping of a record of all disciplinary infractions and punishment administered therefore. This requirement may be satisfied by retaining copies of rule violation reports and report of the disposition of each.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

## ARTICLE 8. MINORS IN JAILS

### 1100. Purpose.

The purpose of this article is to establish minimum standards for local adult detention facilities, types II and III, in which minors are lawfully detained.

Unless otherwise specified in statute or these regulations, minors lawfully held in local adult detention facilities shall be subject to the regulations and statutes governing those facilities found in Minimum Standards for Local Detention Facilities, Title 15, Division 1, Chapter 1, Subchapter 4, Section 1000 et seq. and Title 24, Part 1, Section 13-102, and Part 2, Section 470A, California Code of Regulations.

An existing jail built in accordance with construction standards in effect at the time of construction and approved for the detention of minors by the Board shall be considered as being in compliance with the provisions of this article unless the condition of the structure is determined by the Board to be dangerous to life, health or welfare of minors.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

### 1101. Restrictions on Contact with Adult Prisoners.

The facility administrator shall establish policies and procedures to restrict contact, as defined in Section 1006, between detained minors and adults confined in the facility.

In situations where brief or accidental contact may occur, such as booking or facility movement, facility staff (trained in the supervision of inmates) shall maintain a constant, side-by-side presence with the minor or the adult to prevent sustained contact.

The above restrictions do not apply to minors who are participating in supervised program activities pursuant to Section 208 (c) of the Welfare and Institutions Code.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

**1102.  Classification.**

The facility administrator shall develop and implement a written plan designed to provide for the safety of staff and minors held at the facility.  The plan shall include the following:

(a) a procedure for receiving and transmitting information regarding minors who present a risk or hazard to self or others while confined at the facility, and the segregation of such minors to the extent possible within the limits of the facility.

(b) a procedure to provide care for any minor who appears to be in need of or who requests medical, mental health, or developmental disability treatment.  Written procedures shall be established by the responsible health administrator in cooperation with the facility administrator.

(c) a suicide prevention program designed to identify, monitor, and provide treatment to those minors who present a suicide risk.

(d) provide that minors be housed separately from adults and not be allowed to come or remain in contact with adults except as provided in Section 208(c) of the Welfare and Institutions Code.

NOTE:  Authority cited:  Section 6030, Penal Code.  Reference:  Section 6030, Penal Code.

**1103.  Release Procedures.**

Facility staff shall notify the parents or guardians prior to the release of a minor.  The minor's personal clothing and valuables shall be returned to the minor, parents or guardian, upon the minor's release or consent.

NOTE:  Authority cited:  Section 6030, Penal Code.  Reference:  Section 6030, Penal Code.

**1104.  Supervision of Minors.**

The facility administrator shall develop and implement policy and procedures that provide for:

(a) continuous around-the-clock supervision of minors with assurance that staff can hear and respond; and,

(b) safety checks of minors no less than every 30 minutes on an irregular schedule.  These safety checks shall include the direct visual observation of movement and/or skin.  Safety checks shall not be replaced, but may be supplemented by, an audio/visual electronic surveillance system designed to detect overt, aggressive, or assaultive behavior and to summon aid in emergencies.  All safety checks shall be documented.

NOTE:  Authority cited:  Section 6030, Penal Code.  Reference:  Section 6030, Penal Code.

**1105.  Recreation Programs.**

The facility administrator shall develop written policies and procedures to provide a recreation program that shall protect the welfare of minors and other inmates, recognize facility security needs and comply with minimum jail standards for recreation (California Code of Regulations, Title 15, Section 1065).

NOTE: Authority cited: Section 6030, Penal Code.  Reference: Section 6030, Penal Code.

**1106.  Disciplinary Procedures.**

Nothing in this regulation shall prevent the administrator from removing a detained minor from the general population or program for reasons of the minor's mental or physical health; or under any circumstances in which the safety of the minor, other inmates, staff, the program or community is endangered, pending a disciplinary action or review.

    (a) Minors requiring disciplinary confinement shall be housed only in living areas designated for the detention of minors.

    (b) Permitted forms of discipline include:

        (1) loss of privileges; and,

        (2) disciplinary confinement.

    (c) Access to visitation and recreation shall be restricted only after a second level review by a supervisor or manager, and shall not extend beyond five days without subsequent review.

    (d) A status review shall be conducted for those minors placed in disciplinary confinement no less than every 24 hours.

    (e) Prohibited forms of discipline include:

        (1) discipline that does not fit the violation;

        (2) corporal punishment;

        (3) inmate imposed discipline;

        (4) placement in safety cells;

        (5) deprivation of food; and,

        (6) the adult disciplinary diet.

NOTE: Authority cited: Section 6030, Penal Code.  Reference: Section 6030, Penal Code.

**1120.  Education Program for Minors in Jails.**

Whenever a minor is held in a Type II or III facility, the facility administrator shall coordinate with the County Department of Education or County Superintendent of Schools to provide education programs as required by Section 48200 of the Education Code.

NOTE: Authority cited: Section 6030, Penal Code.  Reference: Section 6030, Penal Code.

### 1121.   Health Education for Minors in Jails.

The health administrator for each jail, in cooperation with the facility administrator and the local health officer, shall develop written policies and procedures to assure that age- and sex- appropriate health education and disease prevention programs are offered to minors.

The education program shall be updated as necessary to address current health priorities and meet the needs of the confined population.

NOTE:  Authority cited:  Section 6030, Penal Code.  Reference:  Section 6030, Penal Code.

### 1122.   Reproductive Information and Services for Minors in Jails.

The health administrator, in cooperation with the facility administrator, shall develop written policies and procedures to assure that reproductive health services are available to both male and female minors in jails.

Such services shall include but not be limited to those prescribed by Welfare and Institutions Code Sections 220, 221 and 222 and Health and Safety Code Section 123450.

NOTE:  Authority cited:  Section 6030, Penal Code.  Reference:  Section 6030, Penal Code.

### 1123.   Health Appraisals/Medical Examinations for Minors in Jails.

When a minor is held in a jail, the health administrator, in cooperation with the facility administrator, shall develop policy and procedures to assure that a health appraisal/medical examination:
- (a) is received from the sending facility at or prior to the time of transfer; and
- (b) is reviewed by designated health care staff at the receiving facility; or,
- (c) absent a previous appraisal/examination or receipt of the record, a health appraisal/medical examination, as outlined in Minimum Standards for Juvenile Facilities, Section 1432, Health Appraisals/Medical Examinations is completed on the minor within 96 hours of admission.

NOTE:  Authority cited:  Section 6030, Penal Code.  Reference:  Section 6030, Penal Code.

### 1124.   Prostheses and Orthopedic Devices for Minors in Jails.

The health administrator, in cooperation with the facility administrator and the responsible physician shall develop written policy and procedures regarding the provision, retention and removal of medical and dental prostheses, including eyeglasses and hearing aids for minors in jail.
- (a) Prostheses shall be provided when the health of the minor in the jail would otherwise be adversely affected, as determined by the responsible physician.
- (b) Procedures for retention and removal of prostheses shall comply with the requirements of Penal Code Section 2656.

NOTE:  Authority cited:  Section 6030, Penal Code.  Reference:  Section 6030, Penal Code.

**1125.  Psychotropic Medications for Minors in Jail.**

The health administrator/responsible physician, in cooperation with the mental health director and the facility administrator, shall develop written policies and procedures governing the use of voluntary and involuntary psychotropic medications for minors.

(a) These policies and procedures shall include, but not be limited to:

(1) protocols for physicians' written and verbal orders for psychotropic medications in dosages appropriate to the minor's need;

(2) requirements that verbal orders be entered in the minor's health record and signed by a physician within 72 hours;

(3) the length of time voluntary and involuntary medications may be ordered and administered before re-evaluation by a physician;

(4) provision that minors who are on psychotropic medications prescribed in the community are continued on their medications pending re-evaluation and further determination by a physician;

(5) provision that the necessity for continuation on psychotropic mediations is addressed in pre-release planning and prior to transfer to another facility or program; and,

(6) provision for regular clinical/administrative review of utilization patterns for all psychotropic medications, including every emergency situation.

(b) Psychotropic medications shall not be administered to a minor absent an emergency unless informed consent has been given by the parent/guardian or the court.

(1) Minors shall be informed of the expected benefits, potential side effects and alternatives to psychotropic medications.

(2) Absent an emergency, minors may refuse treatment.

(c) Minors found by a physician to be a danger to themselves or others by reason of a mental disorder may be involuntarily given psychotropic medication immediately necessary for the preservation of life or the prevention of serious bodily harm, and when there is insufficient time to obtain consent from the parent, guardian, or court before the threatened harm would occur.  It is not necessary for harm to take place or become unavoidable prior to initiating treatment.

(d) Administration of psychotropic medication is not allowed for disciplinary reasons.

NOTE:  Authority cited:  Section 6030, Penal Code.  Reference:  Section 6030, Penal Code.

## ARTICLE 9. MINORS IN TEMPORARY CUSTODY IN A LAW ENFORCEMENT FACILITY

### 1140.  Purpose.

The purpose of this article is to establish minimum standards for law enforcement facilities in which minors are securely detained or held in non-secure custody.

Unless otherwise specified in statute or these regulations, minors lawfully held in local adult detention facilities shall be subject to the regulations and statutes governing those facilities found in Title 15, Division 1, Chapter 1, Subchapter 4, Section 1000 et seq. and Title 24, Part 1, Section 13-102, and Part 2, Section 470A, California Code of Regulations.

NOTE:   Authority cited: Section 6030, Penal Code; and Section 210.2 Welfare and Institutions Code. Reference: Section 6030, Penal Code; and Section 210.2 Welfare and Institutions Code.

### 1141.  Minors Arrested for Law Violations.

Any minor taken into temporary custody by a peace officer, on the basis that they are a person described by Section 602 of the Welfare and Institutions Code, may be held in secure detention or non-secure custody within a law enforcement facility that contains a lockup for adults provided that the standards set forth in these regulations are met.

NOTE:   Authority cited: Section 6030, Penal Code; and Section 210.2 Welfare and Institutions Code. Reference: Section 6030, Penal Code; and Section 210.2 Welfare and Institutions Code.

### 1142.  Written Policies and Procedures.

The facility administrator shall develop written policies and procedures concerning minors being held in temporary custody which shall address:
    (a)  suicide risk and prevention;
    (b)  use of restraints;
    (c)  emergency medical assistance and services; and,
    (d)  prohibiting use of discipline.

NOTE:   Authority cited: Section 6030, Penal Code; and Section 210.2 Welfare and Institutions Code. Reference: Section 6030, Penal Code; and Section 210.2 Welfare and Institutions Code.

### 1143.  Care of Minors in Temporary Custody.

    (a)  The following shall be made available to all minors held in temporary custody:
        (1)  access to toilets and washing facilities;
        (2)  one snack upon request during term of temporary custody if the minor has not eaten within the past four (4) hours or is otherwise in need of nourishment;
        (3)  access to drinking water; and,
        (4)  privacy during consultation with family, guardian, and/or lawyer.
    (b)  In addition to the above, minors placed in locked rooms shall be:

(1) provided blankets and clothing, as necessary, to assure the comfort of the minor; and,

(2) permitted to retain and wear his or her personal clothing unless the clothing is inadequate, presents a health or safety problem, or is required to be utilized as evidence of an offense.

NOTE:   Authority cited: Section 6030, Penal Code; and Section 210.2 Welfare and Institutions Code. Reference: Section 6030, Penal Code; and Section 210.2 Welfare and Institutions Code.

## 1144.   Contact Between Minors and Adult Prisoners.

The facility administrator shall establish policies and procedures to restrict contact, as defined in Section 1006, between detained minors and adults confined in the facility.

In situations where brief or accidental contact may occur, such as booking or facility movement, facility staff (trained in the supervision of inmates) shall maintain a constant, side-by-side presence with the minor or the adult to prevent sustained contact.

NOTE:   Authority cited: Section 6030, Penal Code; and Section 210.2 Welfare and Institutions Code. Reference: Section 6030, Penal Code; and Section 210.2 Welfare and Institutions Code.

## 1145.   Decision on Secure Detention.

A minor who is taken into temporary custody by a peace officer on the basis that he or she is a person described by Section 602 of the Welfare and Institutions Code may be held in secure detention in a law enforcement facility that contains a lockup for adults if the minor is 14 years of age or older and if, in the reasonable belief of the peace officer, the minor presents a serious security risk of harm to self or others, as long as all other conditions of secure detention set forth in these standards are met.  Any minor in temporary custody who is less than 14 years of age, or who does not in the reasonable belief of the peace officer present a serious security risk of harm to self or others, shall not be placed in secure detention, but may be kept in non-secure custody in the facility as long as all other conditions of non-secure custody set forth in these standards are met.

In making the determination whether the minor presents a serious security risk of harm to self or others, the officer may take into account the following factors:

(a) age, maturity, and delinquent history of the minor;

(b) severity of the offense(s) for which the minor was taken into custody;

(c) minor's behavior, including the degree to which the minor appears to be cooperative or non-cooperative;

(d) the availability of staff to provide adequate supervision or protection of the minor; and,

(e) the age, type, and number of other individuals who are detained in the facility.

NOTE:   Authority cited: Section 6030, Penal Code; and Section 210.2 Welfare and Institutions Code. Reference: Section 6030, Penal Code; and Section 210.2 Welfare and Institutions Code.

### 1146.  Conditions of Secure Detention.

While in secure detention, minors may be locked in a room or other secure enclosure, secured to a cuffing rail, or otherwise reasonably restrained as necessary to prevent escape and protect the minor and others from harm.

NOTE:  Authority cited: Section 6030, Penal Code; and Section 210.2 Welfare and Institutions Code. Reference: Section 6030, Penal Code; and Section 210.2 Welfare and Institutions Code.

### 1147.  Supervision of Minors Held Inside a Locked Enclosure.

(a)  Minors shall receive adequate supervision which, at a minimum, includes:
    (1) constant auditory access to staff by the minor; and,
    (2) unscheduled safety checks of the minor by staff of the law enforcement facility, no less than every 30 minutes, which shall be documented.
(b)  Males and females shall not be placed in the same locked room unless under constant direct visual observation by staff of the law enforcement facility.

NOTE:  Authority cited: Section 6030, Penal Code; and Section 210.2 Welfare and Institutions Code. Reference: Section 6030, Penal Code; and Section 210.2 Welfare and Institutions Code.

### 1148.  Supervision of Minors in Secure Detention Outside of a Locked Enclosure.

Minors held in secure detention outside of a locked enclosure shall not be secured to a stationary object for more than 60 minutes unless no other locked enclosure in available.  A staff person from the facility shall be present at all times to assure the minor's safety while secured to a stationary object.  Securing minors to a stationary object for longer than 60 minutes, and every 30 minutes thereafter, shall be approved by a supervisor.  The decision for securing a minor to a stationary object for longer than 60 minutes and every 30 minutes thereafter shall be based upon the best interests of the minor and shall be documented.

NOTE:  Authority cited: Section 6030, Penal Code; and Section 210.2 Welfare and Institutions Code. Reference: Section 6030, Penal Code; and Section 210.2 Welfare and Institutions Code.

### 1149.  Criteria for Non-Secure Custody.

Minors held in temporary custody, who do not meet the criteria for secure detention as specified in Section 207.1(d) of the Welfare and Institutions Code, may be held in non-secure custody if a brief period of time is needed to investigate the case, facilitate release of the minor to a parent or guardian, or arrange for transfer of the minor to an appropriate juvenile facility.

NOTE:  Authority cited: Section 6030, Penal Code; and Section 210.2 Welfare and Institutions Code. Reference: Section 6030, Penal Code; and Section 210.2 Welfare and Institutions Code.

### 1150.  Supervision of Minors in Non-Secure Custody.

Minors held in non-secure custody shall receive constant direct visual observation by staff of the law enforcement facility.  Entry and release times shall be documented and made available for review.  Monitoring a minor using audio, video, or other electronic devices shall never replace constant direct visual observation.

NOTE:  Authority cited: Section 6030, Penal Code; and Section 210.2 Welfare and Institutions Code. Reference: Section 6030, Penal Code; and Section 210.2 Welfare and Institutions Code.

### 1151.  Intoxicated and Substance Abusing Minors in a Lockup.

Facility administrators shall develop policies and procedures providing that a medical clearance shall be obtained for minors who are intoxicated by any substance, to the extent that they are unable to care for themselves.

Supervision of minors in secure detention who display outward signs of intoxication shall include safety checks no less than once every 15 minutes until resolution of the intoxicated state or release.  These safety checks shall be documented, with actual time of occurrence recorded.

Supervision of minors in nonsecure detention who display outward signs of intoxication shall be supervised in accordance with Section 1150.

NOTE:  Authority cited: Section 6030, Penal Code; and Section 210.2 Welfare and Institutions Code. Reference: Section 6030, Penal Code; and Section 210.2 Welfare and Institutions Code.

### ARTICLE 10. MINORS IN COURT HOLDING FACILITIES

### 1160.  Purpose.

The purpose of this article is to establish minimum standards for court holding facilities in which minors are held pending appearance in juvenile or criminal court.
Unless otherwise specified in statute or these regulations, minors held in court holding facilities shall be subject to the regulations and statutes governing those facilities found in Title 15, Division 1, Chapter 1, Subchapter 4, Section 1000 et seq. and Title 24, Part I, Section 13-102, and Part 2, Section 470A, California Code of Regulations.

NOTE: Authority cited:  Section 6030, Penal Code.  Reference:  Section 6030, Penal Code

### 1161.  Conditions of Detention.

Court holding facilities shall be designed to provide the following:
(a) Separation of minors from adults in accordance with Section 208 of the Welfare and Institutions Code.
(b) Segregation of minors in accordance with an established classification plan.

(c) Secure non-public access, movement within and egress.  If the same entrance/exit is used by both minors and adults, movements shall be scheduled in such a manner that there is no opportunity for contact.

An existing court holding facility built in accordance with construction standards at the time of construction shall be considered as being in compliance with this article unless the condition of the structure is determined by the appropriate authority to be dangerous to life, health, or welfare of minors.  Upon notification of noncompliance with this section, the facility administrator shall develop and submit a plan for corrective action to the Corrections Standards Authority within 90 days.

NOTE: Authority cited:  Section 6030, Penal Code.  Reference:  Section 6030, Penal Code.

## 1162.  Supervision of Minors.

A sufficient number of personnel shall be employed in each facility to permit unscheduled safety checks of all minors at least twice every 30 minutes, and to ensure the implementation and operation of the activities required by these regulations.  There shall be a written plan that includes the documentation of safety checks.

NOTE: Authority cited:  Section 6030, Penal Code.  Reference:  Section 6030, Penal Code.

## 1163.  Classification.

The administrator of a court holding facility shall establish and implement a written plan designed to provide for the safety of staff and minors held at the facility.  The plan shall include receiving and transmitting of information regarding minors who represent a risk or hazard to self or others while confined at the facility, and the segregation of such minors to the extent possible within the limits of the court holding facility, and for the separation of minors from any adult inmate(s) as required by Section 208 of the Welfare and Institutions Code.

NOTE: Authority cited:  Section 6030, Penal Code.  Reference:  Section 6030, Penal Code.

## ARTICLE 11. MEDICAL/MENTAL HEALTH SERVICES

## 1200.  Responsibility for Health Care Services.

(a) In Type I, II, III and IV facilities, the facility administrator shall have the responsibility to ensure provision of emergency and basic health care services to all inmates.  Medical, dental, and mental health matters involving clinical judgments are the sole province of the responsible physician, dentist, and psychiatrist or psychologist respectively; however, security regulations applicable to facility personnel also apply to health personnel.

Each facility shall have at least one physician available to treat physical disorders.  In Type IV facilities, compliance may be attained by providing access into the community; however, in such cases, there shall be a written plan for the treatment, transfer, or referral in the event of an emergency.

(b) In court holding and temporary holding facilities, the facility administrator shall have the responsibility to develop written policies and procedures which ensure provision of emergency health care services to all inmates.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

## 1202.  Health Service Audits.

The health authority shall develop and implement a written plan for annual statistical summaries of health care and pharmaceutical services that are provided. The responsible physician shall also establish a mechanism to assure that the quality and adequacy of these services are assessed annually. The plan shall include a means for the correction of identified deficiencies of the health care and pharmaceutical services delivered.

Based on information from these audits, the health authority shall provide the facility administrator with an annual written report on health care and pharmaceutical services delivered.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

## 1203.  Health Care Staff Qualifications.

State and/or local licensure and/or certification requirements and restrictions apply to health care personnel working in the facility the same as to those working in the community. Copies of licensing and/or certification credentials shall be on file in the facility or at a central location where they are available for review.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

## 1204.  Health Care Staff Procedure.

Medical care performed by personnel other than a physician shall be performed pursuant to written protocol or order of the responsible physician.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

## 1205.  Medical/Mental Health Records.

(a) The health authority shall maintain individual, complete and dated health records which shall include, but not be limited to:
(1) receiving screening form/history;
(2) medical/mental health evaluation reports;
(3) complaints of illness or injury;
(4) names of personnel who treat, prescribe, and/or administer/deliver prescription medication;
(5) location where treated; and,
(6) medication records in conformance with section 1216.

(b) The physician/patient confidentiality privilege applies to the medical/mental health record. Access to the medical/mental health record shall be controlled by the health authority or designee.

   The health authority shall ensure the confidentiality of each inmate's medical/mental health record file and such files shall be maintained separately from and in no way be part of the inmate's other jail records. The responsible physician or designee shall communicate information obtained in the course of medical/mental health screening and care to jail authorities when necessary for the protection of the welfare of the inmate or others, management of the jail, or maintenance of jail security and order.

(c) Written authorization by the inmate is necessary for transfer of medical/mental health record information unless otherwise provided by law or administrative regulations having the force and effect of law.

(d) Inmates shall not be used for medical/mental health record keeping.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

## 1206. Health Care Procedures Manual.

The health authority shall, in cooperation with the facility administrator, set forth in writing, policies and procedures in conformance with applicable state and federal law, which are reviewed and updated at least annually and include but are not limited to:

(a) summoning and application of proper medical aid;

(b) contact and consultation with private physicians;

(c) emergency and non-emergency medical and dental services, including transportation;

(d) provision for medically required dental and medical prostheses and eyeglasses;

(e) notification of next of kin or legal guardian in case of serious illness which may result in death;

(f) provision for screening and care of pregnant and lactating women, including prenatal and postpartum information and health care, including but not limited to access to necessary vitamins as recommended by a doctor, information pertaining to childbirth education and infant care, and other services mandated by statute;

(g) screening, referral and care of mentally disordered and developmentally disabled inmates;

(h) implementation of special medical programs;

(i) management of inmates suspected of or confirmed to have communicable diseases;

(j) the procurement, storage, repackaging, labeling, dispensing, administration/delivery to inmates, and disposal of pharmaceuticals;

(k) use of non-physician personnel in providing medical care;

(l) provision of medical diets;

(m) patient confidentiality and its exceptions;

(n) the transfer of pertinent individualized health care information, or individual documentation that no health care information is available, to the health authority of another correctional system, medical facility, or mental health facility at the time each inmate is transferred and prior notification pursuant to Health and Safety Code Sections 121361 and 121362 for inmates with known or suspected active tuberculosis disease. Procedures for notification to the transferring health care staff shall allow

sufficient time to prepare the summary. The summary information shall identify the sending facility and be in a consistent format that includes the need for follow-up care, diagnostic tests performed, medications prescribed, pending appointments, significant health problems, and other information that is necessary to provide for continuity of health care. Necessary inmate medication and health care information shall be provided to the transporting staff, together with precautions necessary to protect staff and inmate passengers from disease transmission during transport.

(o) forensic medical services, including drawing of blood alcohol samples, body cavity searches, and other functions for the purpose of prosecution shall not be performed by medical personnel responsible for providing ongoing care to the inmates.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

## 1206.5 Management of Communicable Diseases in a Custody Setting.

(a) The responsible physician, in conjunction with the facility administrator and the county health officer, shall develop a written plan to address the identification, treatment, control and follow-up management of communicable diseases including, but not limited to, tuberculosis and other airborne diseases. The plan shall cover the intake screening procedures, identification of relevant symptoms, referral for a medical evaluation, treatment responsibilities during incarceration and coordination with public health officials for follow-up treatment in the community. The plan shall reflect the current local incidence of communicable diseases which threaten the health of inmates and staff.

(b) Consistent with the above plan, the health authority shall, in cooperation with the facility administrator and the county health officer, set forth in writing, policies and procedures in conformance with applicable state and federal law, which include, but are not limited to:

(1) the types of communicable diseases to be reported;

(2) the persons who shall receive the medical reports;

(3) sharing of medical information with inmates and custody staff;

(4) medical procedures required to identify the presence of disease(s) and lessen the risk of exposure to others;

(5) medical confidentiality requirements;

(6) housing considerations based upon behavior, medical needs, and safety of the affected inmates;

(7) provisions for inmate consent that address the limits of confidentiality; and,

(8) reporting and appropriate action upon the possible exposure of custody staff to a communicable disease.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 6030, 7501, and 7552, Penal Code.

## 1207. Medical Receiving Screening.

With the exception of inmates transferred directly within a custody system with documented receiving screening, a screening shall be completed on all inmates at the time of intake. This screening shall be completed in accordance with written procedures and shall

include but not be limited to medical and mental health problems, developmental disabilities, and communicable diseases, including, but not limited to, tuberculosis and other airborne diseases. The screening shall be performed by licensed health personnel or trained facility staff.

The facility administrator and responsible physician shall develop a written plan for complying with Penal Code Section 2656 (orthopedic or prosthetic appliance used by inmates).

There shall be a written plan to provide care for any inmate who appears at this screening to be in need of or who requests medical, mental health, or developmental disability treatment.

Written procedures and screening protocol shall be established by the responsible physician in cooperation with the facility administrator.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 2656 and 6030, Penal Code.

### 1207.5 Special Mental Disorder Assessment.

An additional mental health screening will be performed, according to written procedures, on women who have given birth within the past year and are charged with murder or attempted murder of their infants. Such screening will be performed at intake and if the assessment indicates postpartum psychosis a referral for further evaluation will be made.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

### 1208. Access to Treatment.

The health authority, in cooperation with the facility administrator, shall develop a written plan for identifying, assessing, treating and/or referring any inmate who appears to be in need of medical, mental health or developmental disability treatment at any time during his/her incarceration subsequent to the receiving screening. This evaluation shall be performed by licensed health personnel.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code

### 1209. Mental Health Services and Transfer to Treatment Facility.

(a) The health authority, in cooperation with the mental health director and facility administrator, shall establish policies and procedures to provide mental health services.

These services shall include but not be limited to:
1. screening for mental health problems;
2. crisis intervention and management of acute psychiatric episodes;
3. stabilization and treatment of mental disorders; and,
4. medication support services.

(b) Unless the county has elected to implement the provisions of Penal Code Section 1369.1, a mentally disordered inmate who appears to be a danger to himself or others,

or to be gravely disabled, shall be transferred for further evaluation to a designated Lanterman Petris Short treatment facility designated by the county and approved by the State Department of Mental Health for diagnosis and treatment of such apparent mental disorder pursuant to Penal Code section 4011.6 or 4011.8 unless the jail contains a designated treatment facility. Prior to the transfer, the inmate may be evaluated by licensed health personnel to determine if treatment can be initiated at the correctional facility. Licensed health personnel may perform an onsite assessment to determine if the inmate meets the criteria for admission to an inpatient facility, or if treatment can be initiated in the correctional facility.

(c) If the county elects to implement the provisions of Penal Code Section 1369.1, the health authority, in cooperation with the facility administrator, shall establish policies and procedures for involuntary administration of medications. The procedures shall include, but not be limited to:

1. Designation of licensed personnel, including psychiatrist and nursing staff, authorized to order and administer involuntary medication;

2. Designation of an appropriate setting where the involuntary administration of medication will occur;

3. Designation of restraint procedures and/or devices that may be used to maintain the safety of the inmate and facility staff;

4. Development of a written plan to monitor the inmate's medical condition following the initial involuntary administration of a medication, until the inmate is cleared as a result of an evaluation by, or consultation with, a psychiatrist;

5. Development of a written plan to provide a minimum level of ongoing monitoring of the inmate following return to facility housing. This monitoring may be performed by custody staff trained to recognize signs of possible medical problems and alert medical staff when indicated; and

6. Documentation of the administration of involuntary medication in the inmate's medical record.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

**1210.  Individualized Treatment Plans.**

(a) For each inmate treated by a mental health service in a jail, the treatment staff shall develop a written treatment plan. The custody staff shall be informed of the treatment plan when necessary, to ensure coordination and cooperation in the ongoing care of the inmate. This treatment plan shall include referral to treatment after release from the facility when recommended by treatment staff.

(b) For each inmate treated for a major medical problem in a jail, the treatment staff shall develop a written treatment plan. The custody staff shall be informed of the treatment plan when necessary, to ensure coordination and cooperation in the ongoing care of the inmate. This treatment plan shall include referral to treatment after release from the facility when recommended by treatment staff.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

### 1211. Sick Call.

There shall be written policies and procedures developed by the facility administrator, in cooperation with the health authority, which provides for a daily sick call conducted for all inmates or provision made that any inmate requesting medical/mental health attention be given such attention.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

### 1212. Vermin Control.

The responsible physician shall develop a written plan for the control and treatment of vermin-infested inmates. There shall be written, medical protocols, signed by the responsible physician, for the treatment of persons suspected of being infested or having contact with a vermin-infested inmate.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

### 1213. Detoxification Treatment.

The responsible physician shall develop written medical policies on detoxification which shall include a statement as to whether detoxification will be provided within the facility or require transfer to a licensed medical facility. The facility detoxification protocol shall include procedures and symptoms necessitating immediate transfer to a hospital or other medical facility.

Facilities without medically licensed personnel in attendance shall not retain inmates undergoing withdrawal reactions judged or defined in policy, by the responsible physician, as not being readily controllable with available medical treatment. Such facilities shall arrange for immediate transfer to an appropriate medical facility.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

### 1214. Informed Consent.

The health authority shall set forth in writing a plan for informed consent of inmates in a language understood by the inmate. Except for emergency treatment, as defined in Business and Professions Code Section 2397 and Title 15, Section 1217, all examinations, treatments and procedures affected by informed consent standards in the community are likewise observed for inmate care. In the case of minors, or conservatees, the informed consent of parent, guardian or legal custodian applies where required by law. Any inmate who has not been adjudicated to be incompetent may refuse non-emergency medical and mental health care. Absent informed consent in non-emergency situations, a court order is required before involuntary medical treatment can be administered to an inmate.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

### 1215. Dental Care.

The facility administrator shall develop written policies and procedures to ensure emergency and medically required dental care is provided to each inmate, upon request, under the direction and supervision of a dentist, licensed in the state.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

### 1216. Pharmaceutical Management.

(a) The health authority in consultation with a pharmacist and the facility administrator, shall develop written plans, establish procedures, and provide space and accessories for the secure storage, the controlled administration, and disposal of all legally obtained drugs. Such plans, procedures, space and accessories shall include, but not be limited to, the following:

    (1) securely lockable cabinets, closets, and refrigeration units;

    (2) a means for the positive identification of the recipient of the prescribed medication;

    (3) procedures for administration/delivery of medicines to inmates as prescribed;

    (4) confirming that the recipient has ingested the medication or accounting for medication under self-administration procedures outlined in Section 1216(d);

    (5) that prescribed medications have or have not been administered, by whom, and if not, for what reason;

    (6) prohibiting the delivery of drugs by inmates;

    (7) limitation to the length of time medication may be administered without further medical evaluation; and,

    (8) limitation to the length of time required for a physician's signature on verbal orders.

    (9) A written report shall be prepared by a pharmacist, no less than annually, on the status of pharmacy services in the institution. The pharmacist shall provide the report to the health authority and the facility administrator.

(b) Consistent with pharmacy laws and regulations, the health authority shall establish written protocols that limit the following functions to being performed by the identified personnel:

    (1) Procurement shall be done by a physician, dentist, pharmacist, or other persons authorized by law.

    (2) Storage of medications shall assure that stock supplies of legend medications shall be accessed only by licensed health personnel. Supplies of legend medications that have been dispensed and supplies of over-the-counter medications may be accessed by either licensed or non-licensed personnel.

    (3) Repackaging shall only be done by a physician, dentist, pharmacist, or other persons authorized by law.

    (4) Preparation of labels can only be done by a physician, dentist, pharmacist or other persons, either licensed or non-licensed, provided the label is checked and affixed to the medication container by the physician, dentist, or pharmacist before

administration or delivery to the inmate. Labels shall be prepared in accordance with section 4076, Business and Professions Code.

(5) Dispensing shall only be done by a physician, dentist, pharmacist, or persons authorized by law.

(6) Administration of medication shall only be done by licensed health personnel who are authorized to administer medication acting on the order of a prescriber.

(7) Delivery of medication may be done by either licensed or non-licensed personnel, e.g., custody staff, acting on the order of a prescriber.

(8) Disposal of legend medication shall be done in accordance with pharmacy laws and regulations and requires any combination of two of the following classifications: physician, dentist, pharmacist, or registered nurse. Controlled substances shall be disposed of in accordance with the Drug Enforcement Administration disposal procedures.

(c) Policy and procedures on "over-the-counter" medications shall include, but not be limited to, how they are made available, documentation when delivered by staff and precautions against hoarding large quantities.

(d) Policy and procedures may allow inmate self-administration of prescribed medications under limited circumstances. Policies and procedures shall include but are not limited to the following considerations:

(1) Medications permitted for self-administration are limited to those with no recognized abuse potential. Medications for treatment of tuberculosis, psychotropic medication, controlled substances, injectables and any medications for which documentation of ingestion is essential are excluded from self-administration.

(2) Inmates with histories of frequent rule violations of any type, or who are found to be in violation of rules regarding self-administration, are excluded from self-administration.

(3) Prescribing health care staff document that each inmate participating in self-administration is capable of understanding and following the rules of the program and instructions for medication use.

(4) Provisions are made for the secure storage of the prescribed medication when it is not on the inmate's person.

(5) Provisions are made for the consistent enforcement of self-medication rules by both custody and health care staff, with systems of communication among them when either one finds that an inmate is in violation of rules regarding self-administration.

(6) Provisions are made for health care staff to perform documented assessments of inmate compliance with self-administration medication regimens. Compliance evaluations are done with sufficient frequency to guard against hoarding medication and deterioration of the inmate's health.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

## 1217. Psychotropic Medications.

The responsible physician, in cooperation with the facility administrator, shall develop written policies and procedures governing the use of psychotropic medications. An inmate

found by a physician to be a danger to him/herself or others by reason of mental disorders may be involuntarily given psychotropic medication appropriate to the illness on an emergency basis. Psychotropic medication is any medication prescribed for the treatment of symptoms of psychoses and other mental and emotional disorders. An emergency is a situation in which action to impose treatment over the inmate's objection is immediately necessary for the preservation of life or the prevention of serious bodily harm to the inmate or others, and it is impracticable to first gain consent. It is not necessary for harm to take place or become unavoidable prior to treatment.

If psychotropic medication is administered during an emergency, such medication shall be only that which is required to treat the emergency condition. The medication shall be prescribed by a physician in written form in the inmate's record following a clinical evaluation (either in person or by telephone). Verbal orders shall be entered in the inmate's record and signed by the physician within 72 hours. The responsible physician shall develop a protocol for the supervision and monitoring of inmates involuntarily receiving psychotropic medication.

Psychotropic medication shall not be administered to an inmate absent an emergency unless the inmate has given his or her informed consent in accordance with Welfare and Institutions Code Section 5326.2, or has been found to lack the capacity to give informed consent consistent with the county's hearing procedures under the Lanterman-Petris-Short Act for handling capacity determinations and subsequent reviews.

There shall be a policy which limits the length of time both voluntary and involuntary psychotropic medications may be administered and a plan of monitoring and re-evaluating all inmates receiving psychotropic medications, including a review of all emergency situations.

The administration of psychotropic medication is not allowed for disciplinary reasons.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

## 1219. Suicide Prevention Program.

The facility administrator and the health authority shall develop a written plan for a suicide prevention program designed to identify, monitor, and provide treatment to those inmates who present a suicide risk.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

## 1220. First Aid Kit(s).

First aid kit(s) shall be available in all facilities. The responsible physician shall approve the contents, number, location and procedure for periodic inspection of the kit(s). In Court and Temporary Holding facilities, the facility administrator shall have the above approval authority, pursuant to Section 1200 of these regulations.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

**1230.   Food Handlers.**

The responsible physician, in cooperation with the food services manager and the facility administrator, shall develop written procedures for medical screening of inmate food service workers prior to working in the facility kitchen.   Additionally, there shall be written procedures for education and ongoing monitoring and cleanliness of these workers in accordance with standards set forth in Health and Safety Code, California Retail Food Code.

NOTE: Authority cited: Section 6030, Penal Code.  Reference: Section 6030, Penal Code.

## ARTICLE 12. FOOD

**1240.   Frequency of Serving.**

In Temporary Holding, Type I, II, and III facilities, and those Type IV facilities where food is served, food shall be served three times in any 24-hour period.   At least one of these meals shall include hot food.   Supplemental food must be served to inmates if more than 14 hours pass between meals.   Additionally, supplemental food must be served to inmates on medical diets in less than a 14-hour period if prescribed by the responsible physician.

A minimum of fifteen minutes shall be allowed for the actual consumption of each meal except for those inmates on medical diets where the responsible physician has prescribed additional time.

Provisions shall be made for inmates who may miss a regularly scheduled facility meal. They shall be provided with a substitute meal and beverage, and inmates on medical diets shall be provided with their prescribed meal.

NOTE: Authority cited: Section 6030, Penal Code.  Reference: Section 6030, Penal Code.

**1241.   Minimum Diet.**

The minimum diet provided shall be based upon the nutritional and caloric requirements found in the 1999-2002 Dietary Reference Intakes (DRI) of the Food and Nutrition Board, Institute of Medicine of the National Academies, the 1990 California Daily Food Guide, and the 2005 Dietary Guidelines for Americans.   Facilities electing to provide vegetarian diets, and facilities that provide religious diets, shall also conform to these nutrition standards.   The nutritional requirements for the minimum diet are specified in the following subsections.   A wide variety of food should be served.

   (a) Protein Group.   Includes beef, veal, lamb, pork, poultry, fish, eggs, cooked dry beans, peas, lentils, nuts, peanut butter and textured vegetable protein (TVP).   One serving equals 14 grams or more of protein; the daily requirement shall be equal to three servings.   In addition, there shall be a requirement to serve a fourth serving from the legumes three days a week.

   (b) Dairy Group.   Includes milk (fluid, evaporated or dry; nonfat, 1% or 2% reduced fat, etc.); cheese (cottage, cheddar, etc.); yogurt; ice cream or ice milk; and pudding.   A serving is equivalent to 8 oz. of fluid milk and provides at least 250 mg. of calcium. All milk shall be pasteurized and fortified with Vitamins A and D.   The daily requirement is three servings.   For persons 15-17 years of age, or pregnant and

lactating women, the requirement is four servings.  One serving can be from a calcium-fortified food containing at least 250 mg. of calcium.

(c) Vegetable-Fruit Group.  Includes fresh, frozen, dried and canned vegetables and fruits.  One serving equals:  ½ cup vegetable or fruit; 6 ounces of 100% juice; 1 medium apple, orange, banana, or potato; ½ grapefruit; or ¼ cup dried fruit.  The daily requirement of fruits and vegetables shall be five servings.  At least one serving shall be from each of the following three categories:

(1) One serving of a fresh fruit or vegetable.
(2) One serving of a Vitamin C source containing 30 mg. or more.
(3) One serving of a Vitamin A source, fruit or vegetable, containing 200 micrograms Retinol Equivalents (RE) or more.

(d) Grain Group.  Includes bread, rolls, pancakes, sweet rolls, ready-to-eat cereals, cooked cereals, corn bread, pasta, rice, tortillas, etc. and any food item containing whole or enriched grains.  At least three servings from this group must be made with some whole grains.  The daily requirements shall be a minimum of six servings.

Providing only the minimum servings outlined in this regulation is not sufficient to meet the inmates' caloric requirements.  Additional servings from the dairy, vegetable-fruit, and bread-cereal groups must be provided in amounts to meet caloric requirements.  In keeping with chronic disease prevention goals, total dietary fat should not exceed 30 percent of total calories on a weekly basis.  Fat shall be added only in minimum amounts necessary to make the diet palatable.

NOTE:  Authority cited:  Section 6030, Penal Code.  Reference:  Section 6030, Penal Code.

## 1242.  Menus.

Menus in Type II and III facilities, and those Type IV facilities where food is served, shall be planned at least one month in advance of their use.  Menus shall be planned to provide a variety of foods, thus preventing repetitive meals.  Menus shall be approved by a registered dietitian before being used.

If any meal served varies from the planned menu, the change shall be noted in writing on the menu and/or production sheet.

Menus, as planned, including changes, shall be evaluated by a registered dietitian at least annually.

NOTE:  Authority cited:  Section 6030, Penal Code.  Reference:  Section 6030, Penal Code.

## 1243.  Food Service Plan.

Facilities shall have a written food service plan that shall comply with the applicable California Retail Food Code. In facilities with an average daily population of 100 or more, there shall be employed or available, a trained experienced food services manager to prepare and implement a food service plan.  In facilities of less than an average daily population of 100 that do not employ or have a food services manager available, the facility administrator shall prepare a food service plan.  The plan shall include, but not limited to, the following policies and procedures:

(a) menu planning;
(b) purchasing;
(c) storage and inventory control;
(d) food preparation;
(e) food serving;
(f) transporting food;
(g) orientation and ongoing training;
(h) personnel supervision;
(i) budgets and food cost accounting;
(j) documentation and record keeping;
(k) emergency feeding plan;
(l) waste management; and
(m) maintenance and repair.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

**1245.  Kitchen Facilities, Sanitation, and Food Storage.**

(a) Kitchen facilities, sanitation, and food preparation, service, and storage shall comply with standards set forth in Health and Safety Code, Division 104, Part 7, Chapters 1-13, Sections 113700 et seq. California Retail Food Code.
(b) In facilities where inmates prepare meals for self-consumption or where frozen meals or pre-prepared food from other permitted food facilities (see Health and Safety Code Section 114381) are (re)heated and served, the following applicable  California Retail Food Code standards may be waived by the local health officer:
   (1) H & S Sections  114130-114141;
   (2) H & S Sections 114099.6, 114095-114099.5, 114101-114109, 114123, and 114125, if a domestic or commercial dishwasher capable of providing heat to the surface of the utensils of a temperature of at least 165 degrees Fahrenheit, is used for the purpose of cleaning and sanitizing multi-service utensils and multi-service consumer utensils;
   (3) H & S Sections 114149-114149.3 except that, regardless of such a waiver, the facility shall provide mechanical ventilation sufficient to remove gases, odors, steam, heat, grease, vapors and smoke from the kitchen;
   (4) H & S Sections 114268-114269; and
   (5) H & S Sections 114279-114282.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

**1246.  Food Serving and Supervision.**

Policies and procedures shall be developed and implemented to ensure that appropriate work assignments are made and food handlers are adequately supervised.  Food shall be prepared and served only under the immediate supervision of a staff member.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

**1247.  Disciplinary Isolation Diet.**

(a)  A disciplinary isolation diet which is nutritionally balanced may be served to an inmate.   No inmate receiving a prescribed medical diet is to be placed on a disciplinary isolation diet without review by the responsible physician or pursuant to a written plan approved by the physician.   Such a diet shall be served twice in each 24 hour period and shall consist of one-half of the loaf (or a minimum of 19 oz. cooked loaf) described below or other equally nutritious diet, along with two slices of whole wheat bread and at least one quart of drinking water if the cell does not have a water supply.   The use of disciplinary isolation diet shall constitute an exception to the three-meal-a-day standard.   Should a facility administrator wish to provide an alternate disciplinary diet, such a diet shall be submitted to the Corrections Standards Authority for approval

(b)  The disciplinary diet loaf shall consist of the following:

> 2-1/2 oz. nonfat dry milk
> 4-1/2 oz. raw grated potato
> 3 oz. raw carrots, chopped or grated fine
> 1-1/2 oz. tomato juice or puree
> 4-1/2 oz. raw cabbage, chopped fine
> 7 oz. lean ground beef, turkey or rehydrated, canned, or frozen Textured Vegetable Protein (TVP)
> 2-1/2 fl. oz. oil
> 1-1/2 oz. whole wheat flour
> ¼ tsp. salt
> 4 tsp. raw onion, chopped
> 1 egg
> 6 oz. dry red beans, pre-cooked before baking (or 16 oz. canned or cooked red kidney beans)
> 4 tsp. chili powder

Shape into a loaf and bake at 350-375 degrees for 50-70 minutes.

NOTE:  Authority cited:  Section 6030, Penal Code.  Reference:  Section 6030, Penal Code.

**1248.  Medical Diets.**

The responsible physician, in consultation with the facility administrator, shall develop written policies and procedures that identify the individual(s) who are authorized to prescribe a medical diet.   The medical diets utilized by a facility shall be planned, prepared and served with consultation from a registered dietitian.   The facility manager shall comply with any medical diet prescribed for an inmate.

The facility manager and responsible physician shall ensure that the medical diet manual, which includes sample menus of medical diets, shall be available in both the medical unit and

the food service office for reference and information. A registered dietitian shall review, and the responsible physician shall approve, the diet manual on an annual basis.

Pregnant women shall be provided a balanced, nutritious diet approved by a doctor.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

## ARTICLE 13. INMATE CLOTHING AND PERSONAL HYGIENE

### 1260. Standard Institutional Clothing.

The standard issue of climatically suitable clothing to inmates held after arraignment in all but Court Holding, Temporary Holding and Type IV facilities shall include, but not be limited to:
(a) clean socks and footwear;
(b) clean outergarments; and
(c) clean undergarments;
   (1) for males – shorts and undershirt, and,
   (2) for females – bra and two pairs of panties.
The inmates' personal undergarments and footwear may be substituted for the institutional undergarments and footwear specified in this regulation. This option notwithstanding, the facility has the primary responsibility to provide the personal undergarments and footwear.
Clothing shall be reasonably fitted, durable, easily laundered and repaired.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

### 1261. Special Clothing.

Provisions shall be made to issue suitable additional clothing, essential for inmates to perform such special work assignments as food service, medical, farm, sanitation, mechanical, and other specified work.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

### 1262. Clothing Exchange.

There shall be written policies and procedures developed by the facility administrator for the scheduled exchange of clothing. Unless work, climatic conditions, illness, or California Retail Food Code necessitates more frequent exchange, outergarments, except footwear, shall be exchanged at least once each week. Undergarments and socks shall be exchanged twice each week.

NOTE: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

### 1263.   Clothing Supply.

There shall be a quantity of clothing, bedding, and linen available for actual and replacement needs of the inmate population.

Written policy and procedures shall specify handling of laundry that is known or suspected to be contaminated with infectious material.

NOTE:  Authority cited:  Section 6030, Penal Code.  Reference:  Section 6030, Penal Code.

### 1264.   Control of Vermin in Inmates Personal Clothing.

There shall be written policies and procedures developed by the facility administrator to control the contamination and/or spread of vermin in all inmates personal clothing.  Infested clothing shall be cleaned, disinfected, or stored in a closed container so as to eradicate or stop the spread of the vermin.

NOTE:  Authority cited:  Section 6030, Penal Code.  Reference:  Section 6030, Penal Code.

### 1265.   Issue of Personal Care Items.

There shall be written policies and procedures developed by the facility administrator for the issue of personal hygiene items.  Each female inmate shall be issued sanitary napkins and/or tampons as needed.  Each inmate to be held over 24 hours who is unable to supply himself/herself with the following personal care items, because of either indigency or the absence of an inmate canteen, shall be issued:
   (a) toothbrush,
   (b) dentifrice,
   (c) soap,
   (d) comb, and
   (e) shaving implements.
Inmates shall not be required to share any personal care items listed in items "a" through "d."  Inmates will not share disposable razors.  Double edged safety razors, electric razors, and other shaving instruments capable of breaking the skin, when shared among inmates, must be disinfected between individual uses by the method prescribed by the State Board of Barbering and Cosmetology in Sections 979 and 980, Division 9, Title 16, California Code of Regulations.

NOTE:  Authority cited:  Section 6030, Penal Code.  Reference:  Section 6030, Penal Code.

### 1266.   Showering.

There shall be written policies and procedures developed by the facility administrator for inmate showering/bathing.  Inmates shall be permitted to shower/bathe upon assignment to a housing unit and at least every other day or more often if possible.

NOTE:  Authority cited:  Section 6030, Penal Code.  Reference:  Section 6030, Penal Code.

**1267.   Hair Care Services.**

    (a)   Hair care services shall be available.

    (b)   Inmates, except those who may not shave for reasons of identification in court, shall be allowed to shave daily and receive hair care services at least once a month.  The facility administrator may suspend this requirement in relation to inmates who are considered to be a danger to themselves or others.

    (c)   Equipment shall be disinfected, after each use, by a method approved by the State Board of Barbering and Cosmetology to meet the requirements of Title 16, Division 9, Sections 979 and 980, California Code of Regulations.

NOTE:  Authority cited:  Section 6030, Penal Code.  Reference:  Section 6030, Penal Code.

## ARTICLE 14. BEDDING AND LINENS

**1270.   Standard Bedding and Linen Issue.**

    The standard issue of clean suitable bedding and linens, for each inmate entering a living area who is expected to remain overnight, shall include, but not be limited to:

    (a)   one serviceable mattress which meets the requirements of Section 1272 of these regulations;

    (b)   one mattress cover or one sheet;

    (c)   one towel; and,

    (d)   one blanket or more depending upon climatic conditions.

    Temporary holding facilities which hold persons longer than 12 hours shall meet the requirements of (a), (b) and (d) above.

NOTE:  Authority cited:  Section 6030, Penal Code.  Reference:  Section 6030, Penal Code.

**1271.   Bedding and Linen Exchange.**

    There shall be written policies and procedures developed by the facility administrator for the scheduled exchange of laundered and/or sanitized bedding and linen issued to each inmate housed.  Washable items such as sheets, mattress covers, and towels shall be exchanged for clean replacement at least once each week.  If a top sheet is not issued, blankets shall be laundered or dry cleaned at least once a month or more often if necessary. If a top sheet is issued, blankets shall be laundered or dry cleaned at least every three months.

NOTE:  Authority cited:  Section 6030, Penal Code.  Reference:  Section 6030, Penal Code.

**1272.   Mattresses.**

    Any mattress issued to an inmate in any facility shall be enclosed in an easily cleaned, non-absorbent ticking, and conform to the size of the bunk as referenced in Title 24, Section 2-470A.3.5, Beds.  Any mattress purchased for issue to an inmate in a facility which is locked to prevent unimpeded access to the outdoors shall be certified by the manufacturer as

meeting all requirements of the State Fire Marshal and the Bureau of Home Furnishings' test standard for penal mattresses at the time of purchase.

NOTE:  Authority cited:  Section 6030, Penal Code.  Reference:  Section 6030, Penal Code.

## ARTICLE 15. FACILITY SANITATION AND SAFETY

### 1280.   Facility Sanitation, Safety, and Maintenance.

The facility administrator shall develop written policies and procedures for the maintenance of an acceptable level of cleanliness, repair and safety throughout the facility. Such a plan shall provide for a regular schedule of housekeeping tasks and inspections to identify and correct unsanitary or unsafe conditions or work practices which may be found.

Medical care housing as described in Title 24, Section 2-470A.2.14, shall be cleaned and sanitized according to policies and procedures established by the health authority.

NOTE:  Authority cited:  Section 6030, Penal Code.  Reference:  Section 6030, Penal Code

Exhibit 93

SUBJECT:   INVOLUNTARY ADMINISTRATION OF PSYCHOTROPIC MEDICATIONS

POLICY:

Involuntary psychotropic medications will only be given when a psychiatric emergency exists. Medications shall not be used for punishment, for the convenience of staff, as a substitute for program, or in quantities that interfere with the treatment program. The responsible physician and program manager in cooperation with the facility manager will be responsible for identifying and transferring inmates requiring involuntary psychotropic medication administration to an appropriate community facility.

DEFINITION:

PSYCHIATRIC EMERGENCY - a situation in which action to impose treatment over the inmate's objection is immediately necessary for the preservation of life or the prevention of serious bodily harm to the inmate or others, and it is impracticable to first gain consent. It is not necessary for harm to take place or become unavoidable prior to treatment.

AUTHORITY REFERENCE:        CCR Title 15, Section 1217
                            IMQ Standard #313 (E) & 401 (E)

PROCEDURE:

A.   MEDICATION ORDER

Involuntary psychotropic medications for a psychiatric emergency shall be given pursuant to a direct written or verbal one-time order from the responsible facility psychiatrist or physician following an on-site evaluation. A telephone order will not be acceptable unless the inmate in question has been personally evaluated by the prescribing physician prior to the psychiatric emergency. If the physician is not available on-site or if the inmate has not been evaluated by the on-call physician prior to the emergency situation, physical restraint should be used and the inmate transferred to the hospital emergency department for physician evaluation.

1.   At no time prior to a Court Order, will an order for involuntary psychotropic medication be "PRN" (as needed) or a "standing order".

2.   Verbal orders shall be entered into the inmate's medical record and signed by the prescribing physician within 72 hours.

3.   The medical program manager and custody facility manager will be notified in writing, or by telephone if not available, within 24 hours of the administration of involuntary psychotropic medication.

353



EXHIBIT 93
JUNG
12-15-11

5046

B.   PATIENT SUPERVISION AND MONITORING

Inmates receiving involuntary psychotropic medications will be admitted to the outpatient housing unit or a safety cell.

1.   Intermittent supervision by the custody staff will be provided at a minimum of every 30 minutes.

2.   Monitoring by nursing staff will be provided at a minimum of every 15 minutes for the first hour and every 30 minutes thereafter until otherwise ordered by prescribing physician to assess response to medication, mental status, general physical appearance, behavior, and hydration.

3.   All monitoring findings will be documented in the inmate's medical record.

4.   The inmate will be evaluated by the responsible prescribing physician at a minimum of every 72 hours.

C.   DURATION OF INVOLUNTARY THERAPY PRIOR TO RIESE HEARING

Inmates who continue to refuse therapy and for whom continued therapy, due to a psychiatric emergency, is deemed necessary by the responsible facility psychiatrist or physician may be continued on involuntary medications in the jail for no longer than 72 hours as long as the individual meets the danger to self or others criteria. Continued involuntary therapy thereafter is pursuant to a transfer to a clinically appropriate community treatment facility.

1.   Inmates exhibiting any clinical deterioration at anytime during involuntary therapy will be transferred immediately to a clinically appropriate treatment facility.

2.   The facility will manage inmates meeting the psychiatric emergency criteria as follows:

a.   The inmate will be transferred to a clinically appropriate treatment facility outside of the jail.

D.   REVIEW

Cases involving the need for involuntary psychiatric medication administration will be reviewed by the Quality Management Committee to evaluate the appropriateness of treatment, the process and whether or not the criteria for psychiatric emergency were met.

354

93-2

5047